[L.A. No. 30514. Aug. 25, 1976.]

AVCO COMMUNITY DEVELOPERS, INC.,
Plaintiff and Appellant, v.
SOUTH COAST REGIONAL COMMISSION et al.,
Defendants and Respondents.

COUNSEL

Fulop, Rolston, Burns & McKittrick, Irwin M. Fulop, Lawrence R. Resnick and Kenneth B. Bley for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Howard N. Ellman and Susan J. Passovoy as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, Roderick Walston and Donatas Januta, Deputy Attorneys General, for Defendants and Respondents.

John Roger Beers, Ballard Jamieson, Jr., and Laurens H. Silver as Amici Curiae on behalf of Defendants and Respondents.

OPINION

MOSK, J.—We are confronted with the apparently irreconcilable conflict between the interests of a land developer who seeks to avoid compliance with a recently enacted law regulating its project, and the interests of the public in assuring development of the property in a manner consistent with the requirements of current law. Specifically, we must decide whether the developer of a subdivision may acquire a vested right to construct buildings on its land without a permit from the California Coastal Zone Commission (the commission) if it has subdivided and graded the property and made certain improvements on the land, such as installing utilities, but had not applied for or received a building permit for any structures on the land before February 1, 1973.

Section 27400 of the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq.), hereinafter called the Act,

provides that on or after February 1, 1973, any person desiring to perform any development within the coastal zone (§ 27104) must obtain a permit from the commission. Section 27404, at the time relevant to the events in the present case, qualified this requirement by allowing a builder to proceed after February 1 if he had obtained a vested right to do so by having secured a building permit and in good faith diligently commenced construction and performed substantial work in reliance thereon before the effective date of the Act.[1] In *San Diego Coast Regional Com.* v. *See The Sea, Limited* (1973) 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129], this court held that a builder who had obtained a building permit and performed substantial work thereunder prior to February 1, 1973, was exempt from the permit requirement of the Act.

Petitioner, Avco Community Developers, Inc. (Avco) owns 7,936 acres of land in Orange County which it is developing as the Laguna Niguel Planned Community. Of this total, 836 acres, known as the Capron property, was purchased by Avco in 1968. Approximately 473 acres of the Capron property lies within the coastal zone. Our concern in this proceeding is with 74 acres of the land within the permit area, designated as tract 7479.

In 1971, the county, at the instance of Avco, zoned 5,234 acres of the Laguna Niguel project, including tract 7479, as a "Planned Community Development" containing a total of 18,925 residential units. The development was to proceed according to "Planned Community District Regulations" enacted by the county. In 1972, a final map was approved for tract 7479, dividing it into 27 parcels, devoted largely to multiple residential uses. In that year the county issued a rough grading permit which did not refer to grading for any specific building site.

Avco undertook a number of studies for the development of the tract, and proceeded to subdivide and grade the property. By February 1, 1973, pursuant to approvals issued for such purposes by the county, Avco had completed or was in the process of constructing storm drains, culverts, street improvements, utilities, and similar facilities for the tract as well as for the remainder of the Capron property. Under the county's building code, a permit could not be obtained until grading had been completed.

[1]Section 27404 was amended in April 1973 to provide that a builder was entitled to the exemption from the permit requirement if he had obtained the permit and performed the work before November 8, 1972.

Avco had not completed the rough grading by February 1, 1973, and it neither submitted building plans for the tract nor obtained a permit to construct any structures. Before that date, the company had spent $2,082,070 and incurred liabilities of $740,468 for the development of the tract; it is losing $7,113.46 a day, largely due to loss of anticipated rental value, as a result of its inability to proceed with construction of buildings on the tract.

Avco applied to the commission for an exemption from the permit requirements of the Act, claiming that it had a vested right to complete development, and, when its application was denied, sought a writ of mandate to compel the commission to grant the exemption.[2] The trial court, after a hearing in which the evidence consisted entirely of the record of the proceedings before the commission, declined to issue the writ.

The court found that the approvals granted by the county for the development of tract 7479 led Avco to reasonably expect that it would be allowed to construct buildings on the tract "without further discretionary governmental approval," and that the subdivision improvements were installed in good faith reliance upon the county's actions. The court also found that Avco had a detailed plan for the buildings to be constructed on the tract. A model of the structures intended to be built on the tract had been completed in July 1971, and the court found that the maximum number, size and type of buildings "allowable" on the tract could be ascertained by reference to the tract map, the planned community district regulations, and the model.

Although the court opined that fairness suggested Avco be allowed to complete development of the tract in accordance with the map, the regulations and the model, nevertheless because Avco did not have a building permit the trial court felt compelled to hold that it did not have a vested right to construct the buildings, and thus was not exempt from the permit requirement of the Act. The court cited *Spindler Realty Corp. v. Monning* (1966) 243 Cal.App.2d 255 [53 Cal.Rptr. 7], and *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, as controlling.

[2]Avco initially applied to the South Coast Regional Commission for an exemption; upon denial of its application, it appealed to the statewide coastal commission, which affirmed the action of the regional commission.

Avco asserts that it had a vested right to construct buildings on tract 7479, that the commission is estopped to claim otherwise, and that the Act is unconstitutional.

## Vested Rights

■ It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. (*Dobbins* v. *City of Los Angeles* (1904) 195 U.S. 223 [49 L.Ed. 169, 25 S.Ct. 18]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776, 784 [194 P.2d 148].) Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied. Here Avco asserts that it had a vested right to construct buildings on tract 7479 without permission from the commission because prior to February 1, 1973, when the coastal permit requirement took effect, it spent large sums of money to construct subdivision improvements and grade the tract, in reliance on several county authorizations, and that these improvements were undertaken and approvals issued for the purpose of constructing buildings. Thus, Avco relies upon the doctrine of vested rights as defined in the common law and in the Act itself.

## Vested Rights Under Common Law

■ Evaluation of this claim requires a determination of the point in the development process at which a landowner can be said to have acquired a vested right to construct buildings on his land. The commission contends, subject to an exception to be discussed *infra*, that a builder may not acquire a vested right prior to the issuance of a building permit, whereas Avco asserts that in the context of a subdivision a developer's right to construct buildings vests when it has subdivided the land and installed subdivision improvements such as roads and utilities pursuant to governmental authorization. Amicus curiae appearing on behalf of Avco (Oceanic California Inc. and Half Moon Bay Properties, Inc.) argue for an even earlier time of vesting in the case of a planned unit development, i.e., when such zoning is imposed on the developer's land.

In resolving this issue, we do not write on a clean slate. In *Spindler Realty Corp.* v. *Monning, supra,* 243 Cal.App.2d 255, a builder whose property was zoned for multiple residential use, sought and obtained a grading permit and other approvals from the City of Los Angeles to prepare a building site. The permit did not refer to the number, size and type of buildings to be erected on the site. In good faith reliance on these permits, Spindler graded the property and submitted building plans for the construction of a high rise apartment complex. It spent over $300,000 for development costs. However, before the building plans were approved, the property was rezoned for single family residential use.

Spindler contended, as does Avco here, that it had acquired a vested right to build multiple dwellings on the lot because, in good faith reliance on the existing zoning and the permits issued by the city, it had incurred substantial expenses to develop and grade the property. The court held that, while Spindler had a vested right to complete grading, it did not have a vested right to build the structures permitted by the prior zoning.

The court reasoned that Spindler knew when obtaining the grading permit that it would be required to secure a building permit in order to construct buildings, and that a grading permit is not the equivalent of a building permit even though a grading permit was required under the city's ordinances before a building permit could issue and such a permit would be granted only for building purposes. Further, opined the court, although Spindler had proceeded in good faith for two years to complete its engineering and architectural plans for the apartment house complex in reliance on multiple residential zoning and the authorizations granted by the city, Spindler was taking a calculated risk in continuing its preparations at least from the time it learned, prior to completion of grading, that the city was considering rezoning the property.

The *Spindler* decision relied heavily on *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal.Rptr. 41]. There, the plaintiffs contended that they had acquired a vested right to build a service station on their property in spite of a change in the zoning law made after they purchased the land, the new enactment requiring a special permit to build a structure for that purpose. They asserted that they had relied, in purchasing the property, upon the assurances of city officials that construction of a service station was permitted, and had spent sums for preliminary development costs.

The *Anderson* court held that, since all of the landowners' acts· had occurred prior to the issuance of a building permit, they could not have acted in reliance upon such a permit, and therefore could not have acquired vested rights in reliance thereon. The opinion observed that the plaintiffs had not cited a single California decision in which "a property owner has been held to have acquired a vested right against future zoning without having first acquired a *building permit* to construct a specific type of building and having *thereafter* expended a considerable sum in reliance upon said permit. Such authority would appear nonexistent for the reason that the vested rights theory is predicated upon estoppel of the governing body . . . . Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel." (229 Cal.App.2d at p. 89.)

Faced with realization that *Spindler* and *Anderson* have not been overruled or disapproved after this court denied hearings in both cases, appellant contends they are distinguishable. Avco claims to have performed far more work on its property than the builder in *Spindler* because in addition to grading the tract it installed subdivision improvements. Moreover, there was reliance upon more governmental approvals than in *Spindler,* and upon specially enacted planned community zoning, whereas Spindler had merely depended upon existing zoning. As for *Anderson,* the landowners in that case, unlike Avco, had received no governmental approvals for improving their property.

■ Despite minor factual variations *Spindler* and *Anderson* are clearly controlling; they stand for the proposition that neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued. By zoning the property or issuing approvals for work preliminary to construction the government makes no representation to a landowner that he will be exempt from the zoning laws in effect at the subsequent time he applies for a building permit or that he may construct particular structures on the property, and thus the government cannot be estopped to enforce the laws in effect when the permit is issued.

■ With commendable candor, the commission concedes that it does not deem a building permit to be an absolute requirement under all circumstances for acquisition of a vested right. It suggests that in rare

situations the government may grant another type of permit, such as a conditional use permit, which affords substantially the same specificity and definition to a project as a building permit, and that in such instances a builder might acquire a vested right even though the document was not designated a "building permit." We need not decide whether a governmental approval of the type referred to by the commission constitutes an exception to the rule pronounced in *Spindler* and *Anderson*, for the proposed exception would not apply here because none of the permits obtained related to identifiable buildings. Not only had Avco failed to apply to the county for permits for specific buildings by the date the requirements of the Act became effective, but the county was not advised of such elementary details as the dimension or height of the buildings to be constructed on tract 7479. The trial court's finding that "the maximum number, size and type of buildings that would be allowable to be constructed upon Tract 7479" could be ascertained by reference to the tract map, the regulations, and the model of the buildings does not support a conclusion to the contrary.

The model was prepared by Avco for its own use and was not submitted to the county.[3] An examination of the tract map and the regulations fails to disclose the number and size of the buildings to be constructed on the tract. The map merely designates certain areas for multiple residential use; the regulations for multiple residential structures are stated in the most general terms, and they do not refer to any identifiable buildings to be constructed on any specific lots.

Thus, on the date the Act became effective, the county did not know, much less had it approved, plans indicating such matters as the placement of the buildings to be built on the tract, the size of the proposed buildings, the number of apartments of specified size, or how high the buildings would rise; there being no legal height limitation for multiple residential units. Indeed, it was not even clear how many units would be built on the tract.[4]

---

[3]Avco submitted photographs of the model, which was prepared in 1971, to the commission. It claims that the model is a "product and synthesis" of the information supplied to the county, but there is nothing in the record to indicate that Avco had supplied the county with detailed information concerning the buildings it intended to construct on the tract.

[4]Avco claims that it intended to construct 1,300 units in the tract, although 1,900 units were "authorized." It does not point to any evidence as to how it determined the number of units "authorized" for the tract. In an application for a permit to the regional commission, Avco sought to build 1,600 units.

Under these circumstances, it would be impossible to determine the precise scope of any purported right to construct buildings on the tract, and we would be compelled to deny the claim of a common law vested right even if we were to accept the theory that the *Spindler* rule is not binding in all circumstances.[5]

But, it is claimed, a subdivider is in a fundamentally different position than developers like those in *Spindler* and *Anderson* who build on a single tract of land, because the subdivider has obtained the approval of a subdivision map, which is asserted to be the "final discretionary approval" necessary in order to construct buildings on the land. That is, although Avco must still obtain a building permit, as well as approval of soil and geological reports, the issuance of such a permit is claimed to be merely a ministerial act since it must be issued by the county if the physical requirements of the building code are met.

The contention that Avco was entitled to a building permit because the county would have been compelled to issue it upon mere application has no merit. The Orange County Building Code (§ 302(a)) provides that a building permit may not issue unless the plans conform not only to the structural requirements of the code but to "other pertinent laws and ordinances." This provision codifies the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit. (*Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 435 [271 P. 487]; see *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [56 Cal.Rptr. 672, 423 P.2d 824]; cf. *Miller* v. *Board of Public Works* (1925) 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479]; and see cases collected in 50 A.L.R.3d 596, 602.) A landowner which has not even applied for a permit cannot be in a better position merely because it had previously received permission to subdivide its property and made certain improvements on the land.[6]

[5]It is not necessary to dwell at length upon Avco's assertions that approval of the tract map and the regulations constitutes the approval of construction of buildings under the Building Code of Orange County. Avco relies on section 7-9-130(c) of the code, which prohibits construction unless a subdivision map, standards of development or a conditional use permit are approved, but the code does not authorize construction without a building permit even if such preliminary approvals are granted.

[6]In *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534 [122 Cal.Rptr. 315], the court applied the "final discretionary approval" test in determining that a landowner had not acquired vested rights to develop its property. The commission had contended in the trial court and in its opening brief on appeal that a

Nor are we convinced by the importuning of amicus curiae that we should make an exception to the accepted rules set forth above because tract 7479 is part of a planned community development. Amicus suggests that a builder acquires a vested right to construct buildings at the time the government approves a planned unit development for the property. Planned unit development allows the construction of buildings on a tract free of conventional zoning so as to permit a cluster of structures, with increased density, on some portions of a tract, leaving the remainder as open space. (*Orinda Homeowners Committee* v. *Board of Supervisors* (1970) 11 Cal.App.3d 768, 772 [90 Cal.Rptr. 88, 43 A.L.R.3d 880].) It is asserted that planned unit development serves the public interest because it provides an excellent means for implementing sound planning and preserving the environment, that a builder's preliminary investment in such a development far exceeds the investment required for a conventional subdivision, and that unless a landowner is assured that he can proceed with such a development in the manner initially approved by the government, he will not have the incentive to participate in a project of that type.

We have no reason to question the merits of planned unit development. However, the approval of such a plan merely imposes a special zoning on the property. It is beyond question that a landowner has no vested right in existing or anticipated zoning. (*HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 516 [125 Cal.Rptr. 365, 542 P.2d 237]; *Morse* v. *County of San Luis Obispo* (1967) 247 Cal.App.2d 600, 602 [55 Cal.Rptr. 710]; *Anderson* v. *City Council, supra,* 229 Cal.App.2d 79, 88-90.) We are aware of no authority compelling us to carve out an exception to this rule for planned unit zoning since the rule governs zoning of all other types. If there is to be a departure from settled rules for zoning of this character it must be provided by the Legislature.

Avco insists that the existence and scope of vested rights is a question of fact for the trial court, that we must accept the court's findings as true,[7]

vested right could arise without a building permit if the government had approved a specific project and "all final discretionary approvals" had been obtained. The court believed itself bound to decide the case on this theory because of the position the commission had adopted below and in its opening brief on appeal.

[7]The parties are in disagreement as to the scope of review of the trial court's findings. Avco contends that because conflicting inferences can be drawn from the evidence before the commission we must accept the trial court's findings as true even though the court made its determination on the basis of the record before the commission, without taking additional evidence. (Citing *Environmental Coalition of Orange County, Inc.* v.

and that they lead inevitably to the conclusion that it has acquired a vested right to construct buildings on tract 7479 without a permit from the commission.

Even if we assume arguendo that a building permit is not required in order to acquire a vested right to construct particular buildings in every case, Avco cannot prevail. As we have seen, although the trial court found that Avco had a detailed plan for the buildings to be erected on the tract, the county was not aware of and had not approved such a plan, and the preliminary approvals which it did grant did not refer to any identifiable buildings. In view of this central premise, the further findings of the trial court that Avco reasonably expected that it would be allowed to construct "buildings" on the tract "without further discretionary governmental approval" and that by granting the preliminary approvals the county represented to Avco that it would be permitted to construct "buildings . . . upon obtaining building permits" are not sufficient to sustain a conclusion that Avco had secured a vested right to build structures which the county did not approve and as to which it had no detailed information.

Our conclusion that Avco has not acquired a vested right under the common law to proceed with its development absent a permit from the commission is not founded upon an obdurate adherence to archaic concepts inappropriate in the context of modern development practices or upon a blind insistence on an instrument entitled "building permit."

If we were to accept the premise that the construction of subdivision improvements or the zoning of the land for a planned community are sufficient to afford a developer a vested right to construct buildings on the land in accordance with the laws in effect at the time the improvements are made or the zoning enacted, there could be serious impairment of the government's right to control land use policy. In some cases the inevitable consequence would be to freeze the zoning laws applicable to a subdivision or a planned unit development as of the time these events occurred.

*AVCO Community Developers, Inc.* (1974) 40 Cal.App.3d 513, 524-525 [115 Cal.Rptr. 59].) The commission, relying on *Aries Dev. Co.* v. *California Coastal Zone Conservation Com., supra,* 48 Cal.App.3d 534, 545, asserts that since the only evidence before the trial court was the administrative record, which in turn consisted of documentary material, the findings of the trial court are not binding upon us. Any views expressed on this issue would be mere dictum because, as we shall conclude, Avco did not acquire a vested right even if we accept the trial court's findings.

Thus tracts or lots in tracts which had been subdivided decades ago, but upon which no buildings have been constructed could be free of all zoning laws enacted subsequent to the time of the subdivision improvement, unless facts constituting waiver, abandonment, or opportunity for amortization of the original vested right could be shown. In such situations, the result would be that these lots, as well as others in similar subdivisions created more recently or lots established in future subdivisions, would be impressed with an exemption of indeterminate duration from the requirements of any future zoning laws. To illustrate: let us hypothesize that because of mounting costs, decreasing demand or innumerable other potential causes, Avco does not build multiple residential units on tract 7479 for a number of years. If we were to accept its premise, the tract would be exempted not only from the current requirements of the Act, but from all zoning laws enacted for an indefinite period in the future. It is no response to these inherent evils to assert that this builder presently intends to construct its multiple residential units expeditiously.

### Vested Rights Under the Act

Avco asserts that even if it does not have a vested right to construct buildings on the tract under common law principles, it nevertheless has such a right under the Act, as construed in *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888.

In *See The Sea,* a property owner *who had obtained a building permit* and commenced construction on the site prior to February 1, 1973, contended that it was exempt from the permit requirement. We held that builders who had performed substantial lawful construction on their projects before that date, pursuant to a building permit, were not required to obtain a permit from the commission. The opinion reasoned that if the Act had been intended to require a commission permit for completion of construction which had been commenced prior to February 1, it would have the effect of imposing a moratorium on all construction in the permit area, and that such a moratorium was not intended by the Act.[8]

---

[8]The opinion states, "[I]t would be unjust now to imply a permit requirement for builders who, like defendant, relied on the absence of an express requirement. Even though a particular construction project might actually conform to the act's objectives, construction would have to be interrupted while a permit is sought." (9 Cal.3d at p. 893.)

Avco's theory appears to be principally that because some portions of the opinion in *See The Sea* refer to "substantial lawful construction" of a project without referring to construction pursuant to a building permit, we were interpreting the Act to allow an exemption even though no building permit has been acquired so long as any work that had been performed was done lawfully. Clearly, however, *See The Sea* did not hold that a building permit was not required for an exemption under the Act. The case was concerned with whether construction by a builder between November 8, 1972, and February 1, 1973, pursuant to a building permit, could be considered in determining whether a vested right had been obtained, and it did not purport to decide the issue involved in the present case. Indeed, the opinion makes it clear that even the acquisition of a building permit before February 1, 1973, was not sufficient to gain an exemption, but that substantial construction under the permit was required in order to qualify for an exemption. (See also *California Central Coast etc. Conservation Com.* v. *McKeon Constr.* (1974) 38 Cal.App.3d 154 [112 Cal.Rptr. 903].)

### *Estoppel*

Avco asserts that even if it does not have a vested right to build without a permit from the commission, it must nevertheless be allowed to proceed with construction because the commission is estopped to enforce the requirements of the Act. This claim is founded upon the so-called "Beach Agreement" entered into between the Orange County Harbor District and Avco, and approved by the state. Under this agreement, Avco consented to sell the county 11 acres of sandy beach at a price substantially below fair market value and an additional 23 acres for parking at fair market value, and to dedicate certain land for access purposes. The district was to use the property for a public park. The sale was conditioned upon the issuance of certain approvals by the county,[9] the enactment of a bill by the Legislature releasing any public rights in the property, and confirmation of the agreement by the State Lands Commission. The approvals were granted, and the bill was passed.

Both the Beach Agreement and the bill recite that there is a disagreement between the county and Avco with respect to whether the public had acquired prescriptive rights in some of the land purchased by

---

[9]For example, the county was required to approve planned community zoning, and to issue a grading permit.

the county, and that the sale is intended to resolve these differences without litigation. Avco asserts that it agreed to sell the property to the Orange County Harbor District in exchange for a commitment by the county and the state that it would be permitted to develop tract 7479 in accordance with the planned community zoning, the regulations and the tract map, that it expended large sums of money in reliance on this promise and that the commission is estopped to apply the requirements of the Act to the development. Predictably, the commission counters this assertion by claiming that the Beach Agreement represented the resolution of a dispute over public prescriptive rights in the land conveyed and has no reference to development of any remaining property.

The trial court declined to decide whether the commission had violated the Beach Agreement because the court concluded that the state's police power overrides any obligation of the state to perform the Beach Agreement, and that the commission was not estopped to require Avco to obtain a permit under the Act.

We agree with this aspect of the trial court's conclusion. Land use regulations, such as the Act, involve the exercise of the state's police power (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 486-489), and it is settled that the government may not contract away its right to exercise the police power in the future. (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 362 [139 P.2d 908]; *Laurel Hill Cemetery* v. *City and County* (1907) 152 Cal. 464, 475 [93 P. 70]; *Maguire* v. *Reardon* (1916) 41 Cal.App. 596, 601-602 [183 P. 303].) Thus, even upon the dubious assumption that the Beach Agreement constituted a promise by the government that zoning laws thereafter enacted would not be applicable to tract 7479, the agreement would be invalid and unenforceable as contrary to public policy.

### Constitutionality of the Act on its Face and as Applied

Avco argues that the Act amounts to a taking of private property for public use without just compensation and that, because the Act was an initiative measure, it deprived Avco of property rights without notice and hearing. Our recent decisions in *State of California* v. *Superior Court (Veta)* (1974) 12 Cal.3d 237, 252-255 [115 Cal.Rptr. 497, 524 P.2d

1281], and *San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 210-218 [118 Cal.Rptr. 146, 529 P.2d 570], provide a complete response to this contention.[10]

Finally, Avco insists that it has been denied equal protection of the law because landowners in other counties who are in the same position would be entitled to an exemption; it does not have a building permit because the Orange County Building Code requires that grading be completed before a building permit may be issued. The laws of other governmental entities allow a grading permit and a building permit to be issued simultaneously. Thus, it is claimed, a landowner who had performed the same amount of work on his land but whose development was located in a county in which simultaneous permits are issued, would be exempt from the permit requirement of the Act, whereas Avco is subject to that requirement.

However, a builder who has obtained a building permit is not comparable to Avco since he has at least obtained approval of a specific structure which complies with the law in effect at the time the permit is issued. Moreover, it cannot be assumed that such a builder would be entitled to a vested right if he did not perform substantial work under the permit. (See *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, 893.)[11]

Our conclusion that no vested right inures to proceed with development of tract 7479 does not strip this land of all value. The result is merely that Avco, like all other landowners in the coastal zone who have not acquired a vested right to develop their property, must apply to the commission for a permit and, if the application is denied, then the desired buildings on the tract cannot be constructed during the period

[10]It is not necessary to discuss Avco's claim that the Act fails to provide adequate standards for determining whether a permit should be granted. This proceeding does not concern the denial of a permit by the commission, but only the denial of an exemption from the permit requirement. Also see *CEEED* v. *California Coastal Zone Conservation Com.* (1974) 43 Cal.App.3d 306, 325-329 [118 Cal.Rptr. 315], in which it was held that the Act did not constitute an unlawful delegation of legislative power.

[11]Another argument of Avco based upon equal protection grounds is also without merit. The Orange County Harbor District secured an exemption from the commission to complete construction of certain facilities, such as a lifeguard station and public restrooms on the land it purchased from Avco for a park. There has been no denial of equal protection merely because the district, on the basis of different facts, was granted an exemption.

the Act is in effect. As we pointed out in *State of California* v. *Superior Court (Veta), supra,* 12 Cal.3d 237, 253, the Act is only an interim measure designed to assure that valuable coastal zone resources are not irreversibly committed during the time the commission is developing a comprehensive plan for the orderly development of the coast, and the permit requirement will automatically be repealed 91 days after adjournment of the 1976 regular session of the Legislature.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

Appellant's petition for a rehearing was denied September 29, 1976, and the opinion was modified to read as printed above.