[Civ. No. 49004. Second Dist., Div. One. Mar. 30, 1977.]

SOUTH COAST REGIONAL COMMISSION,
Plaintiff and Respondent, v.
EDWARD HIGGINS et al., Defendants and Appellants.

SOUTH COAST REGIONAL COMMISSION,
Plaintiff and Respondent, v.
EDWARD HIGGINS et al., Defendants and Appellants.

638

## COUNSEL

Martin J. Barab for Defendants and Appellants.

Evelle J. Younger, Attorney General, Robert H. Connett, Assistant Attorney General, and David R. Goldman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is a consolidated appeal from judgments in two actions brought by the South Coast Regional Commission (Commission) pursuant to the California Coastal Zone Conservation Act of 1972 (Coastal Act). The judgments restrain defendants from development of properties which are the subject of the litigation without a permit from the appropriate coastal commission and impose civil penalties for violations of the Coastal Act.

The case at bench primarily involves application of the rule of *San Diego Coast Regional Com.* v. *See The Sea, Limited* (1973) 9 Cal.3d 888 [109 Cal.Rptr. 377, 513 P.2d 129]. There our Supreme Court held exempt from the permit requirements of the Coastal Act projects concerning which a building permit had been acquired, "substantial lawful work" had been performed, and "substantial liabilities" incurred prior to February 1, 1973, the effective date of the act. (9 Cal.3d at p. 893.) Here

we are required to determine whether "substantial lawful work" includes that involved in the off-site manufacture of prefabricated housing units interchangeably usable on the property or any other which defendants contracted to purchase in the month before the February 1, 1973, cut-off date and before defendants obtained a building permit.

We conclude that defendants' contract to acquire the prefabricated units does not qualify as "lawful work" on the project as the term is used in *See The Sea.* We conclude also that the record supports a trial court finding to the effect that defendants subsequent to initiative Proposition 20, by which the Coastal Act was adopted, acted in bad faith "to take advantage of the delayed coastal permit requirement, . . ." and that hence defendants may not rely upon any rule of vested rights created by *See The Sea.* (9 Cal.3d at p. 893, fn. 6.) We determine, finally, that contentions of defendants that the trial court erred in not sustaining their affirmative defenses of laches and unclean hands on the part of Commission are not supported by the record.

Accordingly, we affirm the judgment of the trial court.

*Facts*

Defendants, acting as the Higgins Grandparents Trust (Higgins) owned a residential lot at 31600 Broadbeach Road, four lots two miles to the west denominated 33400, 33404, 33408, and 33412 Pacific Coast Highway, along with an additional three lots in the Malibu area six miles further west designated 26724, 26742, and 26743 Via Linda. All of the property is within the zone covered by the Coastal Act. In April of 1972, Higgins "started thinking about" development of the properties.

On September 27, 1972, Higgins, without securing a building permit, purchased a prefabricated factory-built home from U. S. Homes, Inc., and had it delivered to the lot at 33412 Pacific Coast Highway. There the unit, consisting of two separate sections, was placed upon temporary wooden supports. On October 24, 1972, the Los Angeles Regional Planning Commission advised Higgins by letter that the described lots were within an area covered by an injunction issued pursuant to the Environmental Development Act which enjoined the county from issuing building permits on properties designated "open or rural." In November, Higgins applied to the court which had issued the injunction for an exemption of the properties which are the subject of this action.

Proposition 20, the initiative measure which adopted the Coastal Act, passed at the November 1972 election. Higgins' application for exemption from the existing injunction was granted in December of 1972.

After receiving the exemption, Higgins decided to develop each of the lots with factory-built prefabricated modular homes. By then U. S. Homes, Inc., from whom Higgins had purchased the factory-built unit still standing uninstalled at 33412 Pacific Coast Highway, was out of business. Higgins contacted Pacific Home Industries, a manufacturer of modular homes. Between January 8 and January 16, 1973, Higgins ordered 12 units consisting of seven "homes" and five "guest houses" from Pacific. A representative of Higgins informed a vice president of Pacific that Higgins "had to get houses fast because Proposition 20 had a February 1 deadline."

On January 23, 1973, Pacific had one unit complete and in inventory. On that date, Higgins, having been informed by Pacific that it would not start work on his order until it received a deposit and a building permit had been issued, delivered a $12,000 deposit to Pacific. Higgins instructed Pacific that the first three modules to be manufactured should be delivered to the three lots on Via Linda.

Despite the lack of a building permit, Pacific began manufacture of the units necessary to fill the Higgins order. Higgins applied for local building permits on each of the eight lots. Separate applications were made for each lot and a different applicant was named in each application without disclosing that the applicant was acting for Higgins.

On January 26, separate building permits were issued for factory-built homes to be installed on the lots at 33408 and 33412 Pacific Coast Highway. On January 22 or 23 and January 30, separate building permits were issued to install factory units on the three lots on Via Linda. On January 31, local building permits issued for installation of the units at 33400 and 33404 Pacific Coast Highway and 31600 Broadbeach Road.

On January 30, Pacific had three units on its "line" which, pursuant to prior instructions of Higgins, were destined for the Via Linda lots. On that date, Higgins instructed Pacific that one of the on-line units, then 60 percent complete, was to be delivered to 33400 Pacific Coast Highway and the other, then 40 percent complete, to 33408 Pacific Coast Highway. It instructed that the unit in inventory be delivered to 33404 Pacific Coast

Highway. The unit in inventory and the three on-line units were similar in construction and installation plan and readily changeable for installation from one site to another. Except for the unit in inventory and the three units on line, Pacific performed no measurable work prior to February 1 on homes to be delivered to the subject lots.

The units other than the U. S. Homes modular at 33412 Pacific Coast Highway, which had been delivered but not installed in September of 1972, were not delivered until late March through May of 1973. On delivery of the 12 units, Higgins paid Pacific $150,000. Prior to February 1, the only on-site work on any of the lots consisted of repairs to the floor and exterior panels of the unit delivered in September which had been damaged in a high wind, and the digging of a seepage pit on each of the three Via Linda lots. None of the holes was lined or capped prior to February 1. All three were dug before a permit authorizing the work was issued.

Higgins continued with the work of development on the eight lots. Acting pursuant to the Coastal Act, the South Coast Regional Commission filed two separate actions, each dealing with a separate segment of the Higgins' lots. The complaints seek to enjoin development and the imposition of civil penalties.

### Trial Court's Action

The trial court found that the construction on each lot was a separate project. It found also that Higgins had not obtained a permit from the South Coast Regional Commission for the development of any of the lots, and that none of the development was exempt from the permit requirement by reason of substantial lawful construction on the property prior to February 1, 1973. The court issued its judgments enjoining development of the properties and imposing civil penalties. This appeal followed.

### Contentions on Appeal

Higgins contends: (1) the record establishes as a matter of law that the Higgins development of the eight lots is exempt from the restrictions of the Coastal Act by reason of the vested right exemption created by *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, and trial court findings of fact sustaining a contrary conclusion are not

supported by substantial evidence; and (2) the Commission is barred from injunctive relief by the doctrines of laches and unclean hands.

### Vested Rights Exemption

Public Resources Code section 27400, a part of the Coastal Act, states: "On or after February 1, 1973, any person wishing to perform any development within the permit area shall obtain a permit authorizing such development from the regional commission and, if required by law, from any city, county, state, regional or local agency." Violations of the permit requirement may be enjoined in a civil action (Pub. Resources Code, § 27425) and civil penalties for violation imposed (Pub. Resources Code, § 27426). There are two separate exemptions to the permit requirement. (*Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149, 156-157 [129 Cal.Rptr. 743].)

A statutory exemption contained in Public Resources Code section 27404 provides: "If prior to November 8, 1972, any city or county has issued a building permit, no person who has obtained a vested right thereunder shall be required to secure a permit from the regional commission. . . . Any such person shall be deemed to have such vested rights, if prior to·November 8, 1972, he has in good faith and in reliance upon the building permit diligently commenced construction and performed substantial work on the development and incurred substantial liabilities for work and materials necessary therefor."

Our Supreme Court has construed the "On or after February 1, 1973" preamble phrase in the permit requirement of section 27400 as permitting development to proceed without a Coastal Act permit where, pursuant to a building permit issued prior to February 1, 1973, the developer had performed " 'substantial lawful construction of [the] project . . . .' " (*San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, 890, 893, as construed in *Urban Renewal Agency* v. *California Coastal Zone Conservation Com.* (1975) 15 Cal.3d 577, 582 [125 Cal.Rptr. 485, 542 P.2d 645].) The Supreme Court's holding is an application of the doctrine of the vested right of a property owner who, in good faith reliance upon a permit issued by government, has performed substantial work and incurred substantial liabilities. The right permits the developer to complete the project despite a change in the law. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 [132 Cal.Rptr. 386, 553 P.2d 546].

Here Higgins does not assert the applicability of the statutory exemption of section 27404. Arguing that the manufacture of the prefabricated houses for which Higgins contracted constitutes as a matter of law substantial lawful work, Higgins claims the exemption enunciated in *See The Sea.*

The argument falters. Whatever may have been the quantum of work performed at its factory by the manufacturer of the units, it was not "lawful construction of the project." The argument is unavailing, also, because of substantial evidence supporting the conclusion that whether or not the manufacture of the modular units is treated as "lawful construction," any activity in that regard (except that pertaining to the one unit delivered to 33412 Pacific Coast Highway) constituted a "bad faith attempt to take advantage of the delayed coastal permit requirement . . . ." (*San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* 9 Cal.3d 888, 893, fn. 6.)

### *"Lawful Construction"—31600 Broadbeach, 34408 Pacific Coast Highway, Via Linda Lots*

■ We note at the outset that whatever meaning may be given to "lawful construction of the project" as a basis for exemption from the Coastal Act permit requirement, Higgins' argument must fail as to 31600 Broadbeach, 34408 Pacific Coast Highway, and the three Via Linda lots.

The only on-site work related to any of those lots consisted of the three seepage pits dug but not completed at Via Linda. The trial court could properly have concluded that the work was not substantial. It certainly could properly have determined that the work was not lawful since it was performed without a required plumbing permit. What remains is the work of Pacific and U. S. Homes in the manufacture at their plants of the modular units.

As of the cutoff date of February 1, 1973, none of the work being performed at Pacific was designated for those properties. While Higgins originally had instructed Pacific that the first three units on the Pacific line were to be delivered to the Via Linda lots, Higgins, on January 30, revoked that instruction. As of January 30, Pacific had two units under construction which at best were to be delivered to two then unspecified lots of the three on Via Linda. Thus, unless the Higgins activity is treated as a single project, there had been, as of February 1, no substantial work

except that related to 33412 Pacific Coast Highway to which the U. S. Homes unit had been delivered on September 27, 1972, prior to the issuance of a building permit, to 33404 Pacific Coast Highway for which Higgins had, on January 30, designated the completed unit in Pacific's inventory, and to 33400 for which Higgins had, in late January, designated the unit on the Pacific line which was 60 percent completed.

The trial court finding that construction on each lot represented a separate project is supported by substantial evidence. Financial interdependence of construction on separate parcels of land does not create a single project as the term is used in the Coastal Act. (*Urban Renewal Agency* v. *California Coastal Zone Conservation Com., supra,* 15 Cal.3d 577, 587.) Rather, there must be a "single development" (*id.,* at p. 587).

Here, aside from financial interdependence of the construction upon the eight lots, there is substantial evidence that Higgins was developing each separately. Higgins applied for a separate building permit on each lot while utilizing a separate ostensible applicant for each permit.

### *"Lawful Construction"—33412, 33400, 33404 Pacific Coast Highway*

■ The trial court properly concluded that there had not been substantial lawful construction related to the properties at 33412, 33400, and 33404 Pacific Coast Highway

The exemption which Higgins seeks requires " 'substantial lawful construction of [the project].' " (*Urban Renewal Agency* v. *California Coastal Zone Conservation Com., supra,* 15 Cal.3d 577, 582.) To qualify a project for exemption from the Coastal Act, the substantial construction must be performed pursuant to a building permit or other governmental permit affording similar rights. (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 791-794.)

Here the manufacture of modular units by U. S. Homes and Pacific at their plants was not pursuant to a building permit issued for construction upon the three lots on Pacific Coast Highway. No building permit was secured as to two of the lots until the day immediately preceding the February 1, 1973, cutoff date after which a Coastal Act permit was required. The building permit as to 33412 Pacific Coast Highway was secured on January 26 but the modular unit on that property had been

■

delivered to it by U. S. Homes some 90 days before a building permit was secured. Nothing was done after January 26 at 33412 except for some vaguely described repair of wind damage to the unit.

There is thus support in the record for the trial court's conclusion that as to the lots at 33400 and 33404 Pacific Coast Highway the one day for which the building permit was in existence did not permit substantial construction. There is thus also support in the record for the trial court's conclusion that the delivery of the modular unit to 33412 Pacific Coast Highway, which preceded the building permit, was not a part of lawful construction authorized by a building permit and that the scope of work done after the building permit was obtained was not substantial.

### Bad Faith

■ A distinct ground of decision also supports the action of the trial court. After intimating in *San Diego Coast Regional Com.* v. *See The Sea, Limited, supra,* that "a bad faith attempt to take advantage of the delayed coastal permit requirement" would bar any right to claim exemption based upon pre-February 1, 1973, development (9 Cal.3d 888, 893, fn. 6), the Supreme Court in *Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* unequivocally enunciated the requirement that pre-February 1, 1973, work have been done in good faith. (17 Cal.3d 785, 791.)

Here the record supports the trial court's conclusion that the pre-February 1, 1973, work ordered by Higgins was not done in good faith but rather represented a bad faith attempt to take advantage of the delayed coastal permit requirement. A representative of Higgins announced as much in seeking quick action by Pacific.

### Laches and Unclean Hands

■ Higgins asserts that the Commission is barred from injunctive relief because it waited until June of 1973 before filing its complaint in the case at bench. Bearing in mind that delivery of the modular units to the properties was not completed until May, the delay is hardly unreasonable. Bearing in mind that Higgins obligated itself to the bulk of the expenditures made by it prior to any opportunity of the Commission to act, it cannot be said that the trial court erred in refusing to find laches, a doctrine based upon prejudice caused by the adverse party's delay.

■ Higgins claims also that the Commission's unclean hands bars equitable relief. It argues that the Commission failed to comply with a duty imposed by statute and its own regulations to inform the County of Los Angeles of its obligation to notify the Commission of applications for building permits as required by the Coastal Act so that the county failed to notify the Commission as it was required to do.

" ' "The misconduct [which is asserted as the defense of unclean hands] must infect the cause of action before the court." ' " (*Sheppard* v. *Wilcox* (1962) 210 Cal.App.2d 53, 61 [26 Cal.Rptr. 412].) Here Higgins has not demonstrated the manner in which the failure of the Commission to notify the County of Los Angeles of its obligation to notify the Commission of applications for building permits is pertinent to the case at bench.

### Disposition

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.