Filed 4/27/22  PLH v. City of L.A. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PLH, LLC, AN INDIANA LIMITED LIABILITY COMPANY, et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants and Respondents. | B304268 <br><br> (Los Angeles County Super. Ct. Nos. 18STCP02606, 18STCP02645, 18STCP02647) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge.  Dismissed.

Law Offices of Daniel Friedlander and Daniel Friedlander for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry Kaufmann Macias, Senior Assistant City Attorney, Steve Blau and Patrick Hagan, Deputy City Attorneys, for Defendants and Respondents.

_____

This case arises from a dispute over whether state law required respondent City of Los Angeles (the City)[1] to issue building permits to petitioners and appellants PLH, LLC and related entities (petitioner)[2] without petitioner first obtaining conditional use permits.  The state law in question is the California Solar Rights Act of 1978 (Stats. 1978, ch. 1154, the "Solar Rights Act") and relevant subsequent amendments.  Interpreting the law in effect at the time of the trial court's decision in November 2019, the trial court found that the Solar Rights Act did not apply to petitioner's projects; the trial court denied the writ relief sought by petitioner in three consolidated cases, dismissed the remaining claims, and entered judgment in favor of the City.  Petitioner appealed.

While petitioner's appeal was pending, the relevant statutory language was amended, effective January 1, 2022, to

[1] The City of Los Angeles Planning Commission and individuals Frank M. Bush and Vince Bertoni are also identified as respondents in this appeal.  References to the City include all respondents as appropriate.

[2] Based on the appellate and administrative record, it appears that PLH, LLC is the controlling owner of other business entities (e.g., Chatsworth Solar, LLC; Kagel Canyon Solar, LLC; and Sylmar Solar, LLC) that were the permit applicants or petitioning parties at various stages of the proceedings under review.  Because the entities are interrelated and present their appellate argument in a single brief, our opinion will refer to a single petitioner despite the existence of three consolidated cases with separate petitioners.  This usage is simply a matter of ease of reference, and is not intended to limit the scope of this opinion to PLH, LLC alone.

expressly exclude projects like the ones proposed by petitioner. As a result of the amendments, we conclude that petitioner's contentions on appeal are moot, and we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*[3]

Petitioner owns three parcels of land, each one adjacent to residential property and zoned either agricultural (A2-1) or suburban-equine keeping (RA-1-K).  In November 2014, petitioner applied for building permits from the Los Angeles City Department of Building and Safety (DBS) for all three parcels, seeking to build support structures for photovoltaic panels (the proposed projects) to generate electricity which would then be sold to the Los Angeles Department of Water and Power (LADWP) under a program called the Feed-in-Tariff (FiT) program.[4]  DBS informed petitioner that it would not issue the

---

[3] The factual background of this case is largely undisputed. The parties lodged with this court the eight-volume administrative record that was entered into evidence by the trial court.  Our review of the factual background is based on the clerk's transcript and the administrative record, viewed in the light most favorable to respondent City where there is a conflict.

[4] In 2012, as the use of solar panels became more widespread, the City enacted a Solar Ordinance (Ord. 182,110) and authorized creation of the FiT program (Ord. 182,108). Under the FiT program, the LADWP had authority to purchase up to three megawatts of electricity from a solar energy facility,

3

building permits until petitioner obtained conditional use permits (CUPs).  Rather than seek CUP approval, however, petitioner appealed the DBS decision, first to the Director of Planning, then to the City of Los Angeles Planning Commission, which denied the appeal in August 2018.

### *Petitioner Seeks Relief in Court*

In October 2018, petitioner filed petitions for writ of mandate in superior court as to each proposed project.  The petitions sought declaratory and injunctive relief against the City for its refusal to issue building permits without a CUP, alleging claims for a traditional writ of mandate, administrative mandamus, violation of the Solar Rights Act, denial of substantive and procedural due process, denial of equal protection, and claims for declaratory and injunctive relief.  Petitioner's claims were based on the premise that the City had incorrectly interpreted the Solar Rights Act and sought orders directing the City to issue building permits for petitioner's proposed projects without requiring CUPs.  The trial court consolidated the cases and stayed the non-writ causes of action.

After a hearing in late November 2019, the trial court issued a 12-page written decision denying writ and declaratory

---

up to a total of 150 megawatts from all sources.  Each facility was subject to a conditional use permit, and in March 2015, the City adopted a Master Conditional Use Permit (Master CUP) for certain types of facilities, such as rooftop or parking lot facilities, provided the facilities were outside of specified zoning designations.  FiT projects that did not fall under the Master CUP, including petitioner's proposed projects, would still require a conditional use permit.

4

relief, based on its determination that the Solar Rights Act did not apply to the proposed projects. The trial court explained, "petitioners raise a pure question of law: whether the Solar Rights Act applies to the three solar projects, which would construct industrial-scale solar facilities to generate power for offsite use." The trial court construed the statutory language and the legislative history as limiting the Solar Rights Act to projects that generate power for use on-site, and as excluding industrial-scale solar facilities designed to generate power solely for off-site use. Accordingly, petitioner could not rely on the Solar Rights Act to obtain writ relief requiring the City to issue building permits without conditions set forth in a CUP. The trial court then dismissed the remaining two causes of action (denial of due process and equal protection) because they were derivative of the substantive allegations made on the writ claims. In January 2020, the trial court entered final judgment against petitioner and in favor of the City, and Petitioner appealed on February 11, 2020.

## DISCUSSION

In its opening and reply briefs on appeal, petitioner argued the trial court's decision was based on an erroneous interpretation of statutory language. Specifically, petitioner argued the Solar Rights Act, which preempts the authority of local agencies and prohibits them from imposing conditions on anything that falls within the statutory definition of a "solar energy system," required the City to issue building permits without requiring petitioner to first obtain CUPs for the proposed projects.

While the current appeal was pending, the California Legislature amended the statutory definition of a "solar energy system." At the invitation of this court, the parties submitted letter briefs addressing the impact of the amendment on the current appeal. The parties agree that petitioner's projects no longer fall within the new statutory definition of a solar energy system. As a result, the City contends that petitioner's appeal is moot. Petitioner contends that the appeal is not moot, because if this court agrees that the proposed projects fell within the former statutory definition of "solar energy system," petitioner would have the "equivalent of a vested right." Petitioner further contends that even without a vested right, the appeal is not moot because petitioner is entitled have the matter remanded on the issue of damages based on its due process and equal protection claims.

## A.  Standard of Review

"'A traditional mandamus is sought to enforce a nondiscretionary duty to act on the part of a court, an administrative agency, or officers of a corporate or administrative agency.' [Citation.] 'There are two requirements essential to issuance of a writ of mandate under Code of Civil Procedure section 1085: (1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty.' [Citation.]" (*Pacifica Firefighters Assn. v. City of Pacifica* (2022) 76

6

Cal.App.5th 758.)[5] "[W]here the pertinent facts are undisputed and the issue is one of statutory interpretation, the question is one of law and we engage in a de novo review of the trial court's determination. [Citation.]" (*Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1253.)

Although petitioner ostensibly sought both traditional and administrative mandate in its complaint, given that it seeks declaratory and injunctive relief based on the argument that the Solar Rights Act imposes upon the City a ministerial duty to issue a building permit, we apply the law of ordinary mandamus, where "the law to be applied is that which is current at the time of judgment in the appellate court." (*Callie v. Board of Supervisors* (1969) 1 Cal.App.3d 13, 18; see also *Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 626 [new California Environmental Quality Act statute stating that traffic delays shall not be considered a significant impact on environment rendered moot petitioner's

---

[5] Petitioner's complaint sought both traditional and administrative mandate, and neither the parties nor the trial court have drawn any meaningful distinction between the two forms of relief. (See *City of Hesperia v. Lake Arrowhead Community Services Dist.* (2019) 37 Cal.App.5th 734, 746–749 [discussing differences in types of writ relief].) Under Code of Civil Procedure section 1085, a party can pursue traditional mandate to challenge an agency's failure to perform an act required by law. Under Code of Civil Procedure section 1094.5, a party seeking an administrative mandate may challenge the results of an administrative hearing. (*Id.* at p. 746.) "It is not inconsistent to award relief under both sections 1094.5 and 1085 of the Code of Civil Procedure." (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752.)

challenge to city's finding that traffic delays were not a significant impact]; *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222 [reviewing "how events occurring after the commencement of a case can result in its mootness" and whether process for dismissing is a ruling on the merits]; *Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243, 1255–1257, fn. 12 ["where no vested rights will be impaired, it is appropriate for an appellate court to apply the law in existence at the time of its decision rather than at the time an approval was issued"].) "The reason a reviewing court applies current rather than former law when reviewing an injunctive decree is because injunctive relief operates in the future. [Citations.] . . . The reviewing court is interested in the law's prospective effect since that is when the decree under review will operate." (*City of Watsonville v. State Dept. of Health Services* (2005) 133 Cal.App.4th 875, 884.)

""""When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'"""" (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856.)

8

### B.  The Solar Rights Act

Since 1978, the California Legislature has enacted legislation and policies to promote "all feasible uses of alternative energy supply sources," including solar energy.  (Pub. Resources Code, § 25980; Gov. Code, § 65850.5.)  "[I]t is the policy of the state to promote and encourage the use of solar energy systems and to remove obstacles thereto."  (Civ. Code, § 714, subd. (b).)  Local agencies may not adopt ordinances that create unreasonable barriers to the installation of solar energy systems.  (Gov. Code, § 65850.5, subd. (a).)  Applications to install solar energy systems must be administratively approved by cities or counties, although a use permit may be required if the governing body makes specified findings of adverse impacts on public health or safety.  (Gov. Code, § 65850.5, subd. (b); Health & Saf. Code, § 17959.1.)

The statutory definition of a "solar energy system" appears in Civil Code section 801.5, subdivision (a).  (Gov. Code, § 65850.5, subd. (j)(4).)  As originally enacted in 1978, the statute defined a solar energy system as any structural design feature of a building, any solar collector, or other solar energy device "whose primary purpose is to provide for the collection, storage, and distribution of solar energy" for water heating, or for space heating or cooling.  (Former Civil Code § 801.5, subd. (a), added by Stats. 1978, ch 1154, § 5, p. 3543.)[6]  In 2001, the definition

---

[6] The relevant portion states: "As used in this section, 'solar energy system' means either of the following: [¶] (1) Any solar collector or other solar energy device whose primary purpose is to

9

was amended to expand the earlier, more limited, list of solar energy system purposes (e.g. water heating, space heating and cooling) to include generating electricity.[7]  In 2018, other amendments unrelated to the current appeal took effect.[8]

_____

provide for the collection, storage, and distribution of solar energy for space heating or cooling, or for water heating; or [¶] (2) Any structural design feature of a building, whose primary purpose is to provide for the collection, storage, and distribution of solar energy for space heating or cooling, or for water heating." (Former Civil Code § 801.5, subd. (a), added by Stats. 1978, ch 1154, § 5, p. 3543.

[7] The amended statutory language read: "As used in this section, 'solar energy system' means either of the following: [¶] (1) Any solar collector or other solar energy device whose primary purpose is to provide for the collection, storage, and distribution of solar energy for space heating, space cooling, electric generation, or water heating.  [¶] (2) Any structural design feature of a building, whose primary purpose is to provide for the collection, storage, and distribution of solar energy for electricity generation, space heating or cooling, or for water heating." (Former Civil Code § 801.5, subd. (a), amended by Stats. 2000, ch. 537, § 2.)

[8] The amended statutory language read: "As used in this section, 'solar energy system' means either of the following: [¶] (1) Any solar collector or other solar energy device whose primary purpose is to provide for the collection, storage, and distribution of solar energy for space heating, space cooling, electric generation, or water heating.  [¶] (2) A structural design feature of a building, including either of the following: [¶] (A) Any design feature whose primary purpose is to provide for the collection, storage, and distribution of solar energy for electricity

Effective January 1, 2022, the definition of a solar energy system was amended again, this time to limit the definition so as to exclude a system that is "designed for procurement of electricity by an electric utility." (Civ. Code, § 801.5, subd. (a).)[9]

---

generation, space heating or cooling, or for water heating. [¶] (B) Any photovoltaic device or technology that is integrated into a building, including, but not limited to, photovoltaic windows, siding, and roofing shingles or tiles. (Former Civil Code § 801.5, subd. (a), amended by Stats. 2017, ch. 849, § 1.)

[9] The amended statutory language now reads: "As used in this section, 'solar energy system' means either of the following that is designed to serve one utility retail customer on the same property, more than one utility retail customer on the same property, one utility retail customer on the same, adjacent, or contiguous properties, or more than one utility retail customer on the same, adjacent or contiguous properties, and is not designed for procurement of electricity by an electric utility:

(1) Any solar collector or other solar energy device whose primary purpose is to provide for the collection, storage, and distribution of solar energy for space heating, space cooling, electric generation, or water heating.

(2) A structural design feature, including the following:

(A) Solar racking, solar mounting, and elevated solar support structures, including, but not limited to, solar carports, solar shade structures, solar awnings, solar canopies, and solar patio covers, regardless of whether the feature is on the ground or on a building. Elevated solar support structures include the aboveground superstructure and associated foundation elements that support the solar collectors or other solar energy devices described in paragraph (1).

(B) Any design feature whose primary purpose is to provide for the collection, storage, and distribution of solar energy for

Although petitioner and the City disagree about whether the proposed projects are solar energy systems as that term was defined between 2001 and 2021, they both agree that the current statutory definition excludes the proposed projects, because the proposed projects would produce electricity solely for sale to an electric utility. Despite acknowledging that this court must apply the law currently in effect, petitioner urges this court to decide the question of whether the pre-2022 statutory definition of a solar energy system encompassed its proposed projects.

## C. Vested Rights and Equitable Estoppel

Petitioner argues that if it prevails in this appeal on the issue of the meaning of the pre-2022 version of the Solar Rights Act, it "would have not only acquired the equivalent of a vested right to proceed" that requires the City to administratively approve the proposed projects, "but the City would be estopped from denying administrative approval of [petitioner's] projects." In essence, petitioner is arguing that once a statutory amendment has taken effect, if a court subsequently determines that a city violated a ministerial duty under the prior law, the beneficiary of that ministerial duty has "the equivalent of a vested right." Petitioner also invokes the concepts of equity and

---

electricity generation, space heating or cooling, or for water heating.
    (C) Any photovoltaic device or technology that is integrated into a building, including, but not limited to, photovoltaic windows, siding, and roofing shingles or tiles." (Civ. Code, § 801.5, subd. (a); amended by Stats. 2021, ch. 235, § 2.)

fairness to argue that this court should now compel the City, which required all earlier participants in the FiT program to either conform to the Master CUP or obtain a CUP, to approve petitioner's permit application, even though current law allows the City to require a CUP. Petitioner's argument lacks any support in the relevant authorities.

In order to assert a vested right in the land use context, a permit applicant must show that (1) the local agency has issued a valid building permit, and (2) the applicant "has performed substantial work and incurred substantial liabilities in good faith reliance" on the permit. (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 (*Avco*); see also *Attard v. Board of Supervisors of Contra Costa County* (2017) 14 Cal.App.5th 1066, 1076–1079 (*Attard*) [rejecting vested rights claim of homeowners who secured an invalid building permit after purporting to have received approval to connect residential sewage line to a different city].)

Petitioner cannot meet either prong of the test for the existence of a vested right. First, no building permit ever issued, because petitioner did not even attempt to obtain the CUP that the City was purporting to require. (See *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 322 (*Toigo*) ["[c]ourts have yet to extend the vested rights or estoppel theory to instances where a developer lacks a building permit or the functional equivalent, regardless of the property owner's detrimental reliance on local government actions and regardless of how many other land use and preliminary approvals have been granted"].) Second, while petitioner points out it invested millions of dollars into the project and entered into contracts with LADWP's FiT program, it acknowledges that these expenses were incurred *before* it sought

13

a building permit from the City in November 2014. Therefore, the expenses were not incurred in reliance on any permit. (See *Avco, supra,* 17 Cal.3d at pp. 791–794.)

In a conclusory manner, petitioner argues, "Equity and fairness now dictate that, should [petitioner] prevail in this appeal, the City should be required to administratively approve [petitioner's] projects under the statutory definition that existed at the time [petitioner] submitted their permit applications and plans to the City. Anything [*sic*] other result would result in substantial injustice [and] inequity to [petitioner.]" Petitioner does not cite to any authority to support this argument, and the argument runs contrary to the case law on vested rights and equitable estoppel in the land use context. Previous cases have explained that a petitioner claiming equitable estoppel "faces daunting odds in establishing estoppel against a governmental entity in a land use case. Courts have severely limited the application of estoppel in this context by expressly balancing the injustice done to the private person with the public policy that would be supervened by involving estoppel to grant development rights outside of the normal planning and review process." (*Toigo, supra* 70 Cal.App.4th at p. 321, citing *Avco, supra,* 17 Cal.3d at p. 800; see also *Attard, supra,* 14 Cal.App.5th at p. 1079 ["equitable estoppel against the government . . . is the exception, not the rule"].)

To the extent petitioner is arguing equitable estoppel separate from the doctrine of vested rights, it has neither met the basic requirements for equitable estoppel nor has it demonstrated that this is the type of "extraordinary case" where estoppel against a government agency is justified because the estoppel is narrow and the injustice is great. (*Attard, supra* 14 Cal.App.5th

14

at pp. 1079–1081.)  Without citing to any supporting evidence, petitioner blames the City for taking almost four years to complete the appeals process.  Petitioner also notes that the parties spent the next three years in litigation.  This is not enough to establish estoppel in the land use context.  We also note that petitioner's estimation that the parties spent three years in litigation includes close to two years spent on the current appeal, where petitioner sought and was granted deadline extensions totaling over 180 days.

## D. Petitioner's Due Process and Equal Protection Claims Cannot Survive Denial of Writ Relief

Petitioner contends that even if the amended definition of "solar energy system" precludes writ relief, it is entitled to pursue its "damage claims encompassed within the fourth and fifth causes of action," for denial of substantive and procedural due process and for denial of equal protection.  Neither cause of action, however, states a claim for damages.  Similar to petitioner's claims for writ, declaratory, and injunctive relief, the fourth cause of action alleges that the City denied petitioner due process because the Government Code prohibited the City from requiring a CUP, and seeks to set aside the denial of the building permits and require the City to permit the projects to proceed without further discretionary approvals.  In the fifth cause of action for denial of equal protection, petitioner alleges the City granted approvals to other projects without requiring a CUP; this cause of action also seeks to set aside the denial of the building permits and require the City to permit the projects to proceed without further discretionary approvals.  Petitioner's prayer for

15

relief includes boilerplate references to "other relief as the Court may deem just and proper," which are included in each and every writ and non-writ cause of action, but we decline to construe these as claims for damages. Moreover, other than reciting general principles of ripeness and mootness, petitioner's argument lacks any citation to legal authority in support of its argument that these two claims state a valid theory of damages, or somehow survive even if writ relief is unavailable.

## DISPOSITION

The appeal filed by PLH, LLC; Chatsworth Solar, LLC; Kagel Canyon Solar, LLC; and Sylmar Solar, LLC is dismissed as moot. In the interest of justice, each party shall bear its own costs.


                                        MOOR, J.

I concur:


        RUBIN, P. J.

PLH, LLC et al. v. City of Los Angeles et al.
B304268


BAKER, J., Concurring in Part and Dissenting in Part



The majority dismisses the appeal as moot.  That is largely correct, but as to plaintiffs and appellants' claim for administrative mandamus relief, I would affirm on the merits. For that claim, we apply the law in effect at the time of defendants and respondents' action on the permit applications, not the law as it stands now.  (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 580; see also *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1194.)  Even under prior law, however, the processing of the permit applications was not error.


BAKER, J.