Filed 7/12/23 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| SOUTH LAKE TAHOE PROPERTY OWNERS GROUP,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SOUTH LAKE TAHOE,<br><br>Defendant and Respondent. | C093603<br><br>(Super. Ct. No. SC20180243)<br><br>ORDER MODIFYING OPINION AND PETITIONS FOR REHEARING ARE DENIED<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 20, 2023, be modified as follows:

On page 22, the last sentence in the first paragraph beginning with "The City's argument is meritless" is replaced with the following:

The City's argument is meritless, as it is not necessary to look beyond Measure T's text to determine the ordinance discriminates against interstate commerce where the text expressly distinguishes between residential homeowners who reside in their South Lake Tahoe homes and all other residential property owners, including out-of-state owners. (See *Camps Newfound/Owatonna, Inc. v. Town of Harrison* (1997) 520 U.S. 564, 575-576.) The complaint's undisputed

1

allegations of Measure T's adoption and its terms were the only facts necessary to plead a facial dormant Commerce Clause violation.

On page 23, third full paragraph beginning with "The omission of a citation" replace the last sentence starting "Moreover, whether Measure T" with the following:

Moreover, whether Measure T facially violates the dormant Commerce Clause is initially a matter of interpreting its text, and citations to the record beyond what is contained in plaintiff's statement of facts and introduction to the constitutional arguments were not necessary.

On page 34, add a final paragraph to section III following the sentence that begins with "We will thus remand for further proceedings" with the following:

We also recognize the ordinance includes a severability clause. On remand, the parties may also address whether the resident homeowner exception is severable from the remainder of Measure T.

The petitions for rehearing are denied.

BY THE COURT:

_____
EARL, P. J.


_____
HULL, J.


_____
KRAUSE, J.

Filed 6/20/23 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| SOUTH LAKE TAHOE PROPERTY OWNERS GROUP, | C093603 |
| Plaintiff and Appellant, | (Super. Ct. No. SC20180243) |
| v. | |
| CITY OF SOUTH LAKE TAHOE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Dylan Sullivan, Judge. Reversed in part, remanded in part and affirmed in part.

Pierce & Shearer, Andrew F. Pierce and Youchen Wang for Plaintiff and Appellant.

Heather Leyn Stroud, City Attorney, Daniel J. Bardzell and Beverly Anne Roxas, Assistant City Attorneys, for Defendant and Respondent.

Best Best & Krieger, Trevor Louis Rusin and Emily S. Chaidez for League of California Cities on behalf of The City of South Lake Tahoe.

Tahoe Regional Planning Agency, John L. Marshall for Tahoe Regional Planning Agency on behalf of The City of South Lake Tahoe.

1

This appeal challenges the constitutionality of a municipal ordinance that prohibits short-term or vacation rental housing. In 2018, voters in the City of South Lake Tahoe (City) enacted Measure T, an initiative that prohibits the use of dwellings in residential zones as short-term or vacation rentals. Measure T amended the City's vacation home rental ordinances to bar the City from issuing any new permits for vacation home rentals in residential zones except for permanent residents' dwellings, and to declare that all such existing and new permits would expire by the end of 2021. Measure T also imposed more strict occupancy limits on vacation rental homes which were to be effective immediately.

Plaintiff South Lake Tahoe Property Owners Group brought this action against the City to have Measure T declared unconstitutional. On cross-motions for summary judgment, the trial court granted summary judgment in favor of the City and denied plaintiff's motion.

Before us, plaintiff contends Measure T (1) unconstitutionally interferes with vested property rights; (2) creates an unconstitutional durational residency requirement to qualify for the exception to the ban; (3) exceeds the initiative power in violation of land use authority vested in the Tahoe Regional Planning Agency (TRPA); and (4) violates rights of privacy and equal protection by restricting occupancy.

We affirm in part and reverse in part and remand for further proceedings.

FACTS AND HISTORY OF THE PROCEEDINGS

The City began regulating vacation home rentals in 2003. The City's vacation home rental ordinance requires homeowners who want to let their dwellings for rentals of less than 30 days to obtain a vacation home rental permit. Since 2017, the ordinance has declared that the permits expire after one year and must be renewed on an annual basis

prior to expiration. (South Lake Tahoe City Code (City Code), § 3.50.400, subds. A, B.)[1] The ordinance states the City's director of development services "shall issue" the permit and a renewed permit if the director makes required findings. (City Code, § 3.50.410, subds. B, C.)

Before Measure T, the City capped the number of vacation home rentals at 1,400, except rentals in the area subject to the Tourist Core Area Plan were not subject to the cap. Maximum occupancy in each vacation rental was the lesser of the number of parking spaces multiplied by four or the number of bedrooms multiplied by two and adding four.

Beginning in 2015, the vacation home rental ordinance informed permit holders that the permit was not a property right, commodity, or anything other than a revocable license issued annually to the property owner in lieu of a business license otherwise required for commercial activity. In 2016, the City amended the ordinance to state that the permit shall not run with the land. In 2017, the City reenacted and amended the ordinance to state: "Vacation home rental permits shall not be construed as providing property rights or vested interests and entitlements in continued operation of a vacation home rental. Vacation home rental permits are revocable licenses which expire annually. Vacation home rental permits shall not run with the land." (City Code, § 3.50.460.)

As of July 2018, there were 1,764 active vacation home rental permits within the City. Of those permits, 1,373, or 77.8 percent, were issued for dwelling units outside the Tourist Core Area. Approximately 10 percent of the dwelling units in the City held vacation home rental permits.

Proponents of Measure T sought to prohibit vacation home rentals in residential zones. In their notice of intent to circulate their petition, they claimed the City had not

---

[1] We grant the City's request for judicial notice of relevant portions of the City Code.

3

adequately addressed residents' complaints of excessive noise, disorderly conduct, overcrowding, traffic, parking, and trash. Proponents believed that vacation home rentals were negatively affecting the character and livability of the City's residential neighborhoods. They also asserted that the rentals were affecting the availability of housing for the City's workforce.

Voters passed Measure T on November 6, 2018: 3,517 votes, or 50.42 percent, were in favor, and 3,459 votes, 49.58 percent, were against. The measure became effective the day of its passage.

In an uncodified section, Measure T states the people ordain that the City "shall not permit any Vacation Home Rental of any real property within any residential zone" within the City after December 31, 2021, except as provided in the ordinance. To accomplish this mandate, the initiative (1) immediately prohibited the City from issuing new or additional permits for vacation home rentals in residential zones; (2) provided that all existing permits for such rentals would continue and were eligible to be renewed until the permit's expiration date in 2021; and (3) provided that all existing permits for vacation home rentals in residential zones would be discontinued by December 31, 2021.

Measure T eliminated the vacation home rental cap and stated that vacation home rentals would continue to be permitted in commercial zones and the Tourist Core Area. Any owner found operating a vacation home rental after December 31, 2021, without a permit will be fined a minimum of $1,000 per violation.

Measure T created an exception for vacation home rentals of permanent residents' dwellings. It authorized a permanent resident to let the resident's dwelling up to a total of 30 days per year, subject to obtaining a permit. For purposes of the exception, a permanent resident is a person who lives in his or her home for the majority of the year and claims a homeowner's property tax exemption.

Measure T also imposed new occupancy limits on all vacation home rentals in residential zones. It limited occupancy to the number of bedrooms multiplied by 2 up to

4

a maximum occupancy of 12 persons. These occupancy limits were effective immediately, but their enforcement has been stayed.

Plaintiff is an unincorporated association of owners and managers of vacation home rental properties in the City's residential zones. It brought this action for declaratory and injunctive relief. It claimed Measure T violated the federal and state constitutions, state statutes, and common law rights, and in particular the rights of due process, privacy, privileges and immunities, obligation of contracts, travel, vested rights, and equal protection. Plaintiff also alleged that the initiative violated state and county laws regulating land use in the Lake Tahoe Basin, was vague and ambiguous, and was beyond the voters' power to adopt.

The parties filed cross-motions for summary judgment or adjudication. The trial court denied plaintiff's motion and granted the City's motion for summary adjudication on all issues except impairment of contracts.

Plaintiff filed a petition for writ of mandate with this court. We denied the petition.

The parties thereafter stipulated that plaintiff would dismiss the impairment of contracts claim with prejudice as moot. The City also agreed not to enforce Measure T's occupancy limits during the pendency of the action. The trial court entered the stipulated order and granted the City's motion for summary judgment.

After noticing this appeal, plaintiff also filed a petition for writ of supersedeas to stay Measure T in its entirety. We denied the petition.[2]

---

[2] The League of California Cities and the Tahoe Regional Planning Agency (TRPA) filed amicus curiae briefs in support of the City on the merits.

## DISCUSSION

## I

### *Standard of Review*

We review an order granting summary judgment de novo. We consider all the evidence set forth in the moving and opposition papers except that to which objections were made and properly sustained by the trial court. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451-1452.)

"A defendant moving for summary judgment must show 'that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action.' (Code Civ. Proc., § 437c, subd. (p)(2).) 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768.) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856.)

"Summary judgment is appropriate only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 850, 856.)" (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158.)

6

We presume Measure T is constitutional, and we must uphold it unless its unconstitutionality "clearly, positively, and unmistakably appears." (*Legislature v. Eu* (1991) 54 Cal.3d 492, 501.)

II

*Vested Rights*

Plaintiff contends it submitted sufficient evidence to establish a triable issue of material fact that despite Measure T, its members have a vested right to continue operating vacation home rentals on their residentially zoned properties. They performed substantial work and incurred substantial liabilities by relying in good faith on their vacation home rental permits, which plaintiff asserts were automatically renewable. Plaintiff also claims that its members' lawful use of their properties when Measure T was enacted are now legal nonconforming uses which cannot be prohibited.

A.    Legal background

The local electorate's right to initiative is guaranteed by the state constitution "and is generally co-extensive with the legislative power of the local governing body." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 775; Cal. Const., art. II, § 11, subd. (a).) Electors in general law cities such as the City may enact zoning ordinances by initiative. (*Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14.)[3]

---

[3]    After Measure T was adopted, the Legislature expressly authorized most cities and their electorates to prohibit short-term rentals in residential areas. Pursuant to statute effective January 1, 2020, a city "may enact a development policy, standard, or condition to prohibit the commercial use of land that is designated for residential use, including, but not limited to, short-term occupancy of a residence, consistent with the authority conferred on the county or city by other law." (Gov. Code, § 66300, subds. (a)(1), (a)(3), (c).)

7

The City's authority, and by extension the electorate's authority, to enact zoning ordinances and an ordinance banning vacation rentals in residential zones is derived from the City's constitutional police power.  The police power is the state's inherent authority to enact laws to regulate and promote the public convenience and general prosperity and to promote public health, public morals, and public safety.  (*Chicago, Burlington & Quincy Railway Co. v. Illinois* (1906) 200 U.S. 561, 592.)  With this authority, cities may make and enforce within their limits "all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  (Cal. Const., art. XI, § 7.)

Police power is not limitless.  The due process clauses of the federal and state constitutions "are the most basic substantive checks" on a government's exercise of its police power.  (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398.)  In general, a city does not violate due process so long as its regulation "is procedurally fair and reasonably related to a proper legislative goal."  (*Ibid*.)  If, however, the regulation infringes on rights afforded express constitutional protection or which are so "fundamental" or " 'implicit in the concept of ordered liberty' " as to require equivalent protection, due process subjects the regulation to a more searching level of scrutiny.  (*Perez v. City of San Bruno* (1980) 27 Cal.3d 875, 889-890.)

In California, the common law doctrine of vested rights also limits police power in land use affairs.  This doctrine as developed in land use law is that "a property owner who, in good faith reliance on a government permit, has performed substantial work and incurred substantial liabilities has a vested right to complete construction under the permit and to use the premises as the permit allows."  (*Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 323 (*Communities*).)  The requisite permit on which a vested right may be based is a valid building permit or its functional equivalent.  (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791, 793, 797 (*Avco*).)

The vested rights doctrine is predicated upon "estoppel of the governing body." (*Anderson v. City Council of City of Pleasant Hill* (1964) 229 Cal.App.2d 79, 89.) Where the holder of a building permit acts upon it and incurs obligations, the permittee's rights "become vested and the governmental body is thereafter estopped to set up a zoning ordinance subsequently enacted. [Citation.] Where no such permit has been issued, it is difficult to conceive of any basis for such estoppel." (*Ibid*.; see *Avco, supra*, 17 Cal.3d at p. 793.)

The doctrine is also based on the constitutional prohibition against the taking of property. (*Communities, supra*, 48 Cal.4th at p. 323, fn. 8.) The rule is grounded on " ' "the constitutional principle that property may not be taken without due process of law." ' " (*Russ Building Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839, 846.)

B.    Analysis

Plaintiff contends it introduced sufficient evidence to create triable issues of material fact on whether its members' operation of vacation home rentals pursuant to their vacation home rental permits created a vested right to have their permits renewed and to continue operating their rental homes despite Measure T. Plaintiff claims the permits' one-year limit did not preclude rights from vesting because the permits were ministerial; they were "automatically" renewable and could not be denied without good cause. Plaintiff also argues the evidence shows its members performed substantial work and incurred substantial liabilities in good faith reliance on their permits. Neither argument persuades.

Our colleagues in the Sixth Appellate District rejected plaintiff's arguments in *Hobbs v. City of Pacific Grove* (2022) 85 Cal.App.5th 311, 325 (*Hobbs*). There, the city's ordinance authorized issuance of licenses for short-term rentals, subject to a cap on the number of licenses the city could issue. (*Id*. at pp. 316-317.) The ordinance declared

9

the licenses would not be renewed automatically, and each applicant acknowledged renewal was not guaranteed. (*Id*. at p. 317.) When the city realized it had exceeded the cap, it used a random lottery to reduce the number of licenses. (*Ibid*.)

The plaintiffs, whose license was selected not to be renewed, contended the city's action violated their procedural due process rights. They argued they had a vested right to have their license renewed because the licenses were ministerial and they had expended significant sums in reliance on their license. (*Hobbs, supra*, 85 Cal.App.5th at pp. 324-325.) The court of appeal disagreed. That issuance of the license was ministerial did not entitle the plaintiffs to renewal, given the limitations on the number of licenses the city could issue. (*Id*. at p. 325.) To the extent the plaintiffs had a vested right to renew their license, that right was limited by the license's express terms, including its expiration date. (*Id*. at pp. 325-326.) Additionally, the plaintiffs' evidence did not establish sufficient detrimental reliance on the license's renewal. It did not quantify what expenses if any plaintiffs incurred solely because of short-term rental expectations, as opposed to the general maintenance of their capital investment. (*Id*. at p. 325.)

We agree with the analysis in *Hobbs* and apply it here. The ministerial nature of plaintiff's members' permits did not entitle the members to renewal. Any vested rights the members may have had in their permits were limited by their permits' terms and conditions, including the one-year expiration dates. (*Hobbs, supra*, 85 Cal.App.5th at pp. 325-326; *Avco, supra*, 17 Cal.3d at p. 791 [vested right is "to complete construction in accordance with the terms of the permit"].) "[T]he rights which may 'vest' through reliance on a government permit are no greater than those specifically granted by the permit itself." (*Santa Monica Pines, Ltd. v. Rent Control Bd.* (1984) 35 Cal.3d 858, 866, overruled on another ground in *City of West Hollywood v. Beverly Towers* (1991) 52 Cal.3d 1184, 1192.)

Since 2015, the City's ordinance has informed permit holders that their permits were not a property right or anything other than a revocable license issued annually. The

ordinance was later amended to state that the permits do not run with the land, and that the permits do not provide property rights or vested interests and entitlements to continued operation of vacation home rentals.

Plaintiff argues the City may not simply declare that use permits do not run with the land or declare in a subsequent law that their rights are not vested. Generally, a vested right in the land use context may not be divested through ordinary police power regulations. It may, however, be impaired or revoked if the use authorized or conducted under it constitutes " ' "a menace to the public health and safety or a public nuisance." ' " (*Stewart Enterprises, Inc. v. City of Oakland* (2016) 248 Cal.App.4th 410, 423.) A vested right does not prohibit a local government from enacting and applying new regulations necessitated by public health and safety concerns. (*Davidson v. County of San Diego* (1996) 49 Cal.App.4th 639, 648 [crematorium developer's vested right under county ordinance to have building permit application reviewed under regulations existing on the date of the application did not prevent the county from enacting and applying new crematorium regulations due to public health and safety concerns].)

When the City reenacted its vacation home rental ordinance in 2017, declaring that vacation home rental permits granted no vested rights and requiring existing permits to be renewed annually, it found that its new regulations were "necessary for the preservation and protection of the public peace, health, safety and/or welfare of the community . . . ." Plaintiff does not challenge the validity of this legislative finding, and its members' permits have been subject to the one-year expiration date ever since.

Relying on *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519 (*Goat Hill*), plaintiff contends its owners had a "fundamental vested right" in the continued operation of their vacation home rental businesses. Plaintiff misapplies the case. At issue there was whether the denial of a conditional use permit for a long-running business affected a "fundamental vested right" for purposes of determining the scope of review in administrative mandamus, not whether the business operator had a common

11

law vested right to continue his use of the land. (*Id*. at p. 1525.) The *Goat Hill* court itself made the distinction: "Preliminarily, we note 'the term "vested" in the sense of "fundamental vested rights" to determine the scope of judicial review . . . [in an administrative mandamus proceeding] is not synonymous with . . . the "vested rights" doctrine relating to land use and development.' [Citation.]" (*Id*. at p. 1526.)

Where an administrative decision affects a "fundamental vested right," as that term as been defined by the courts, the trial court on administrative mandamus must apply its independent judgment, as opposed to the substantial evidence test, to determine whether the administrative decision is supported by the evidence. (*Goat Hill, supra*, 6 Cal.App.4th at p. 1526.) This is because " 'abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' [Citation.]" (*Ibid*.)

In contrast, under the judicial "vested rights" doctrine relating to land use and development, "a property owner acquires the irrevocable right to complete construction 'notwithstanding an intervening change in the law that would otherwise preclude it.' [Citation.]" (*Hobbs, supra*, 85 Cal.App.5th at p. 324.) Whether plaintiff's members have a fundamental vested interest in continuing their vacation home rental businesses for purposes of determining the scope of review in administrative mandamus does not address whether the members have a vested right to continue using their residential properties for vacation rentals in violation of Measure T and the City's vacation home rental ordinance.

In addition to the limitations contained in the members' permits, the evidence plaintiff submitted to establish detrimental reliance also did not create a disputed issue of material fact. To meet its evidentiary burden in opposing the City's motion for summary judgment, plaintiff submitted two original declarations with its opposition, and it requested the trial court take judicial notice of sworn declarations by four other members it had submitted to support its own motion for summary judgment. Three of the members own vacation home rentals, one of whom also manages other vacation rental properties in

12

the City, and the fourth member is an owner of a construction business who has built several vacation home rentals in the City.  The trial court denied the request for judicial notice, as plaintiff sought to have the court take judicial notice of the truth of the matters asserted in the declarations.  The court ruled they could be admitted for that purpose only if they had been filed as original declarations in opposition to the City's motion, which they had not.

As a result of the trial court's ruling, the only testimonial evidence of plaintiff's members submitted in opposition to the City's motion for summary judgment consisted of declarations by Christopher Cefalu and Timothy Jordan.  Cefalu stated he owned a vacation home rental in the City just outside the Tourist Core Area.  He built the house to be a vacation rental, and he included extra durable flooring and interior finishes.  He estimated his investment could be returned to him only over a 10-year period.  He stated his house had lost value as compared to properties outside the City limits which could still be rented for vacation rentals.  Cefalu did not quantify his investment or lost value.

Jordan is a trustee of a trust that owns a house in the City's residential area which has been used for vacation rentals for more than 10 years.  He first obtained a vacation home rental permit in 2005.  He and his family and friends use the property approximately one-eighth to one-tenth of each year.  Renting the property is not a profit-making enterprise.  He rents the property to afford owning it.  He improved the property by installing a bear box and significant landscaping to obtain the permit.  He will be unable to pay for the property through vacation home rentals if Measure T takes effect.  Jordan also did not quantify his investment.

This evidence is insufficient to establish or create a triable issue of material fact on the issue of detrimental reliance  Neither declaration discloses the amount each person invested in his rental property or in permanent improvements to the property in reliance on an approved vacation home rental permit, nor does either discuss the ability to recover some or all of the investment by using or selling the property for its permitted uses.  We

13

are unable to determine the extent to which either member performed substantial work and incurred substantial liabilities in reliance on a rental permit.

Plaintiff contends the trial court erred in not taking judicial notice of its other evidence because the four excluded declarations were not offered to prove the truth of the matters stated. Plaintiff asserts they were instead offered to establish the existence of material, triable issues to deny summary judgment. We disagree with that distinction. The declarations could present triable issues only if they were admitted for the truth of the factual matters they stated. It is the allegations contained in the declaration that are subject to dispute, not the declaration's existence. The mere existence of a declaration in the court files, which is all the court could judicially notice, does not establish a triable issue of material fact.

A court "may in its discretion take judicial notice of any court record in the United States. (Evid. Code, § 451.) This includes any orders, findings of facts and conclusions of law, and judgments within court records. (See, e.g., *Columbia Casualty Co. v. Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457; *Day v. Sharp* (1975) 50 Cal.App.3d 904.) However, while courts are free to take judicial notice of the *existence* of each document in a court file, including the truth of results reached, they may not take judicial notice of the truth of hearsay statements in decisions and court files. (*Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7.) Courts may not take judicial notice of allegations in affidavits, declarations and probation reports in court records because such matters are reasonably subject to dispute and therefore require formal proof. (See, e.g., *Magnolia Square Homeowners Assn. v. Safeco Insurance Co.* (1990) 221 Cal.App.3d 1049, 1056-1057.)" (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882.)

Plaintiff nonetheless asks us to consider the excluded evidence. It claims we should consider it because the trial court considered the excluded declarations as part of ruling on plaintiff's motion for summary judgment for which they were submitted, the

14

City did not object to the declarations being included in the request to take judicial notice, plaintiff filed the declarations as original declarations in opposition to the City's motion after the trial court released its tentative ruling and before the court released its final ruling, and the court's ruling was not dependent on the admission of the evidence.

We will not consider the evidence. The trial court was required to determine the cross-motions independently of each other. (*Tahoe Regional Planning Agency v. King* (1991) 233 Cal.App.3d 1365, 1375, fn. 1 (*King*).) It thus did not abuse its discretion in requiring plaintiff to submit original declarations in opposition to the City's motion.

The City's lack of an objection is irrelevant when it is plaintiff who claims the trial court erred. And although the trial court, after denying the judicial notice request, assumed for the sake of argument that all the declarations were properly before it, it still determined the declarations did not raise a triable issue of material fact. Because the trial court's ruling excluding the evidence was based on the denial of judicial notice, we need go no further to affirm that ruling.

C.    Amortization of nonconforming use

In addition to claiming a vested right in the vacation home rental permit, plaintiff argues the trial court erred when it determined Measure T's three-year amortization period was a reasonable period for ending plaintiff's members' now nonconforming uses of residentially zoned property. There was no study of how Measure T would affect the members or what a reasonable amortization period would be. Plaintiff relied on its submitted declarations to assert the amortization period was unreasonable.

Zoning legislation "may validly provide for the eventual termination of nonconforming uses without compensation if it provides a reasonable amortization period commensurate with the investment involved." (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 882 (*Metromedia*), reversed on other grounds, *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490, 521.) An amortization provision provides a

15

period in which a new land use ordinance will not be enforced. During that time, an affected property user can make a use conform to the ordinance, or, if the user cannot or chooses not to conform, the user can recover all or a part of his or her investment before the use must be discontinued. (*King, supra*, 233 Cal.App.3d at p. 1393.)

Determining the reasonableness of an amortization period "is not merely a matter of accounting. 'It is not required that the nonconforming property concerned have no value at the termination date.' [Citation.] The determination instead involves a process of weighing the public gain to be derived from a speedy removal of the nonconforming use against the private loss which removal of the use would entail." (*Metromedia, supra*, 26 Cal.3d at pp. 882-883.)

Courts have upheld relatively short amortization periods for ending a nonconforming use. (See *Castner v. City of Oakland* (1982) 129 Cal.App.3d 94, 96-97 [one-year amortization for nonconforming adult bookstore use]; *People v. Gates* (1974) 41 Cal.App.3d 590, 604-605 [18-month period to terminate nonconforming auto wrecking yard use as a nuisance]; *City of Los Angeles v. Gage* 127 Cal.App.2d 442, 460-461 [five-year period to end nonconforming plumbing business use in residential zone].) In light of these authorities, Measure T's three-year period facially appears to be a reasonable amortization period.

However, in determining whether an amortization period for ending a nonconforming use is reasonable and commensurate with the investment involved, each case must be determined on its own facts. (*National Advertising Co. v. County of Monterey* (1970) 1 Cal.3d 875, 879.) The plaintiff's burden "is to establish the invalidity of the ordinance in its application to plaintiff's property." (*Ibid.*)

Factors courts have found useful to consider when reviewing an amortization period include, but are not limited to, the amount invested in the facility or in permanent improvements to the property, the effect on the plaintiff's business, the cost and time required to move the business, the amount of favorably zoned land in the jurisdiction

16

where the business could be relocated, the ability to recover the investment by using or selling the property for its permitted uses, the time the owner had notice of the nonconforming use, and the extent of the nonconformity.  (See *Castner v. City of Oakland, supra*, 129 Cal.App.3d at p. 97; *People v. Gates, supra*, 41 Cal.App.3d at pp. 604-605; *City of Los Angeles v. Gage, supra*, 127 Cal.App.2d at p. 461.)

Plaintiff did not submit sufficient evidence that created a triable issue of material fact regarding the reasonableness of the three-year amortization period.  As already set forth, plaintiff's declarations did not include sufficient detailed information to create a disputed issue on the reasonableness of the amortization period.  Nor did they discuss the ability to recover some or all of their investment by using or selling the properties for their permitted uses.

Because plaintiff has not established a triable issue of material fact regarding the existence of a vested right or the reasonableness of Measure T's amortization period, we affirm the trial court's grant of summary adjudication to the City on the vested rights claim.

### III

### *Exception for Residents*

Despite its ban on vacation home rentals in residential zones, Measure T allows permanent residents to let their dwellings up to a total of 30 days per year, subject to obtaining a permit.  For purposes of the exception, a permanent resident is a person who lives in his or her home a majority of the year and claims a homeowner's property tax exemption under article XIII, section 3, subdivision (k) of the California Constitution. That provision exempts from property taxation $7,000 of the full value of a "dwelling . . . occupied by an owner as his principal residence[.]"

Plaintiff contends Measure T's exception for residents is an unconstitutional durational residency requirement.  Plaintiff argues the distinction triggers strict scrutiny

17

as an infringement on property rights in violation of equal protection, the right to travel, the dormant Commerce Clause, and the Privileges and Immunities Clause. Plaintiff also asserts that the exception does not survive under a rational basis review.

Following oral argument, we vacated submission and asked the parties to address in supplemental briefing the following questions: did the operative complaint sufficiently allege a dormant Commerce Clause violation to support granting summary judgment; did plaintiff forfeit its dormant Commerce Clause claim by not including citations to the record or a developed legal argument in its opening brief as required by the Rules of Court; and what effect, if any, did the analysis in *Hignell-Stark v. City of New Orleans* (5th Cir. 2022) 46 F.4th 317 (*Hignell-Stark*), a case plaintiff brought to our attention before oral argument, have on plaintiff's dormant Commerce Clause claim. The parties have submitted their supplemental briefs and we have reviewed them.

We agree with plaintiff that its complaint sufficiently pleaded a violation of the dormant Commerce Clause, its opening brief satisfied the Rules of Court, and Measure T's residency requirement facially discriminates against interstate commerce in violation of the dormant Commerce Clause. We will remand for further proceedings on whether the measure's legitimate purposes cannot be served by nondiscriminatory alternatives. We do not address plaintiff's other constitutional arguments against the residency requirement.

A.    Sufficiency of the operative complaint

The City initially contends that plaintiff did not allege a violation of the dormant Commerce Clause in its complaint. We asked the parties to address whether the complaint alleges the violation sufficiently to support granting summary judgment. (See *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 585 (*Soria*).) We conclude that, considering the case's history, plaintiff sufficiently pleaded the claim and the City suffered no prejudice.

18

### 1. Background

It is correct that in the specific causes of action alleging unconstitutionality, the complaint does not allege a violation of the Commerce Clause. However, the causes of action incorporate paragraph 1 of the complaint, and in that paragraph, plaintiff alleged Measure T was unconstitutional because "it discriminates against owners who are not 'permanent residents' while allowing 'permanent residents' to continue renting their properties to visitors as short-term rentals[.]" The causes of action also incorporate paragraph 12 of the complaint, which alleges Measure T contains "a discriminatory and unconstitutional exception for 'permanent residents' who may rent their home for up to thirty days per year even after 2021."

The issue was specifically raised in law and motion proceedings. In a motion for preliminary injunction, plaintiff argued that Measure T's permanent resident exception was an unconstitutional durational residency requirement and violated the dormant Commerce Clause. The City did not respond because the trial court awarded a preliminary injunction based on the parties' stipulation.

Plaintiff raised the issue in its motion for summary judgment. It contended that Measure T contained an unconstitutional durational residency requirement. It repeated its constitutional arguments from its preliminary injunction papers, including the argument that Measure T violated the dormant Commerce Clause.

In its opposition to plaintiff's motion, the City addressed plaintiff's argument under the dormant Commerce Clause. Initially, the City argued that plaintiff did not allege a violation of the dormant Commerce Clause in its complaint and should be barred from making the argument. The City then addressed the argument on its merits, arguing that under *Rosenblatt v. City of Santa Monica* (9th Cir. 2019) 940 F.3d 439 (*Rosenblatt*), Measure T's residency requirement did not violate the dormant Commerce Clause.

19

Plaintiff also raised the argument in its opposition to the City's motion for summary judgment. In its reply, the City repeated its argument from its opposition to plaintiff's motion. It stated plaintiff did not allege a violation of the dormant Commerce Clause in its complaint, and in any event, the permanent resident exception did not violate the dormant Commerce Clause under *Rosenblatt*.

The trial court resolved the dormant Commerce Clause claim on its merits in its rulings on both motions. It did not address the City's claim that plaintiff had forfeited the issue. On plaintiff's motion, the court ruled that plaintiff had not established as a matter of law that the permanent resident exception violated the dormant Commerce Clause. On the City's motion, it ruled that the permanent resident exception did not discriminate against interstate commerce as a matter of law.

Before us, both parties have addressed the issue on its merits.

### 2. Analysis

" 'A defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' (*Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98-99, fn. 4; see *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264 ['[t]o create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings'].) In assessing whether the issues raised by plaintiff in opposing summary judgment are encompassed by the controlling pleading, we generally construe the pleading broadly (see, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257); but the pleading must allege the essential facts ' " 'with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of [the] cause of action.' " ' (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Insurance Exchange* (2005) 132 Cal.App.4th 1076, 1099.)" (*Soria, supra*, 5 Cal.App.5th at p. 585.)

The City argues that our ruling on this issue should mirror the result reached in *Soria*. In that case, the plaintiff's complaint alleged that her employment termination violated the Fair Employment and Housing Act's prohibition against employment discrimination based on disability, but it did not expressly allege discrimination based on a medical condition, a separate statutory ground of employment discrimination. (*Soria, supra*, 5 Cal.App.5th at pp. 580, 583-584.) Opposing her employer's motion for summary judgment, the plaintiff claimed triable issues of fact existed about discrimination based on a medical condition. (*Id*. at p. 581.)

The court of appeal affirmed the grant of summary judgment for the employer. Although the complaint used the term "medical condition" several times, it did not allege the plaintiff met the definition of having a medical condition under the statute, or that a medical condition was the cause of or a motivating factor for her termination. The only reason for termination expressly or impliedly alleged in the complaint was disability. The complaint did not sufficiently put the employer on notice the plaintiff was asserting the separate claim. (*Soria, supra*, 5 Cal.App.5th at pp. 585-586.)

Our case is distinguishable from *Soria*. We agree that the complaint did not expressly inform the City that the dormant Commerce Clause was a source of plaintiff's claims for declaratory and injunctive relief. But the complaint's allegation that Measure T unconstitutionally discriminated against out-of-state interests in favor of permanent City residents alleges a classic violation of the dormant Commerce Clause. (*Brown-Forman Distillers Corp. v. New York State Liquor Auth.* (1986) 476 U.S. 573, 579 [when the effect of a state statute "is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry"].) In that regard, the complaint, interpreting it broadly, alleged the essential facts with sufficient particularity to acquaint the City with its claim under the dormant Commerce Clause. (See *Soria, supra*, 5 Cal.App.5th at p. 585.)

In its supplemental brief, the City argues that the facts plaintiff would have needed to plead to allege a dormant Commerce Clause violation are different than what it alleged, and that plaintiff does not point to any facts alleged in the complaint that would have entitled it to relief under the dormant Commerce Clause. The City's argument is meritless, as whether Measure T facially violates the dormant Commerce Clause is an issue of law, and the complaint's undisputed allegations of Measure T's adoption and its terms were the only facts necessary to plead a facial dormant Commerce Clause violation.

Moreover, the issue was fully briefed in the City's motion for summary judgment by both parties, and the trial court ruled on the issue's merits. These facts satisfy *Soria* and provide us with a sufficient ground to address the issue on its merits. (See *Hauselt v. County of Butte* (2009) 172 Cal.App.4th 550, 564 [court of appeal rejected arguments that defendant had waived statute of limitations defense by not pleading it and plaintiff had waived the specific pleading requirement where the defense was fully briefed and litigated on the merits in the trial court at a bench trial].)

B.      Sufficiency of plaintiff's opening brief

Rule 804 of the California Rules of Court requires briefs to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority," and "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(B), (C).)

While plaintiff's opening brief is not a model for compliance with the rule, it contains enough information on the dormant Commerce Clause claim to pass muster. The dormant Commerce Clause discussion falls within a larger section of the brief under the heading "Measure T Is Unconstitutional as a Whole Because It Contains an Unconstitutional 'Permanent Resident' Exception." Introducing the argument, plaintiff

22

stated that the ballot argument for Measure T highlighted the exception for permanent residents and made clear the proponents' "anti-outsider bias by castigating the opponents as 'residents of Nevada' and 'outside realtors.' " The brief cited to the ballot arguments contained in the administrative record to support this assertion.

The brief explained that courts have found durational residency requirements to be unconstitutional under various provisions of the Constitution, including the Commerce Clause as well as the Equal Protection Clause, the Privileges and Immunities Clause, and the right to travel. Plaintiff argued that strict scrutiny applied to each of the constitutional provisions mentioned, and then it discussed each provision.

Under the heading "Commerce Clause," plaintiff cited a case, *Selevan v. New York Thruway Authority* (2d.Cir. 2009) 584 F.3d 82, 90 (*Selevan*), for the proposition that a statute violates the dormant Commerce clause " 'if it "clearly discriminates against interstate commerce in favor of intrastate commerce." ' " Plaintiff then repeated its argument that the ballot arguments indicated that Measure T intended to prevent Nevada residents from renting out vacation homes in the City. We infer from these statements that plaintiff is arguing Measure T discriminates against interstate commerce, and it supports the argument with a citation to authority.

The omission of a citation to the ballot argument or other parts of the record in the "Commerce Clause" portion of the brief does not concern us. Plaintiff cited to the ballot argument earlier as part of introducing its constitutional arguments against the permanent resident exception. Moreover, whether Measure T facially violates the dormant Commerce Clause is a question of law, and citations to the record beyond what is contained in plaintiff's statement of facts and introduction to the constitutional arguments were not necessary.

In any event, we have discretion to disregard violations of the briefing rules, particularly where the opposing party "cannot reasonably claim prejudice from our consideration" of plaintiff's argument. (*Nelsen v. Legacy Partners Residential, Inc.*

23

(2012) 207 Cal.App.4th 1115, 1122.)  The City cannot claim prejudice.  Plaintiff's brief was sufficient to put the City on notice of its argument, and the City fully addressed the issue in its respondent's brief.  Plaintiff thus did not forfeit its dormant Commerce Clause argument due to noncompliance with rule 804 of the Rules of Court.

### C.      The dormant Commerce Clause

#### 1.      Legal background

The dormant Commerce Clause, which is judicially inferred in the federal constitution, limits a state's power to regulate domestic interstate and foreign commerce. (U.S. Const., art. I, § 8, cl. 3; *Pacific Merchant Shipping Assn. v. Voss* (1995) 12 Cal.4th 503, 514 (*Voss*).)  Its purpose is to restrict state taxes and regulatory matters that "imped[e] free private trade in the national marketplace." (*Reeves, Inc. v. Stake* (1980) 447 U.S. 429, 437.)  It accomplishes its purpose by prohibiting a state from enacting laws that discriminate against or unduly burden interstate commerce. (*South Dakota v. Wayfair, Inc.* (2018) __ U.S. __ [201 L.Ed.2d 403, 416-417].)

State laws that discriminate against interstate commerce "face 'a virtually *per se* rule of invalidity.' [Citation.]" (*South Dakota v. Wayfair, Inc., supra*, 201 L.Ed.2d  at p. 417.)  "[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' (*Oregon Waste Systems, Inc. v. Department of Environmental Quality* [] (1994) 511 U.S. 93, 99 [] [(*Oregon Waste*)]; [citation].)  This rule is essential to the foundations of the Union.  The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States." (*Granholm v. Heald* (2005) 544 U.S. 460, 472.)

Discrimination against interstate commerce may take any of three forms:  "first, the state statute may facially discriminate against interstate or foreign commerce; second, it may be facially neutral but have a discriminatory purpose; third, it may be facially

neutral but have a discriminatory effect." (*Voss, supra*, 12 Cal.4th at p. 517.) "In determining whether a state statute is *facially* discriminatory, the following matters are irrelevant: the justification that the state offers for the discrimination, the legitimacy of the state interests that the statute is designed to protect, the degree and scope of the discrimination, and the volume of commerce affected." (*Ibid.*)

The dormant Commerce Clause prohibits state discrimination only between similar entities. "[A]ny notion of discrimination assumes a comparison of substantially similar entities. . . . [W]hen the allegedly competing entities provide different products, . . . there is a threshold question whether the companies are indeed similarly situated for constitutional purposes. This is so for the simple reason that the difference in products may mean that the different entities serve different markets, and would continue to do so even if the supposedly discriminatory burden were removed. If in fact that should be the case, eliminating the tax or other regulatory differential would not serve the dormant Commerce Clause's fundamental objective of preserving a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors." (*General Motors Corp. v. Tracy* (1997) 519 U.S. 278, 298-299, fn. omitted.) "Thus, in the absence of actual or prospective competition between the supposedly favored and disfavored entities in a single market there can be no local preference . . . to which the dormant Commerce Clause may apply. The dormant Commerce Clause protects markets and participants in markets . . . ." (*Id*. at p. 300.)

A state law that discriminates against interstate commerce must be declared unconstitutional "unless the state can justify the discrimination by showing that it ' "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." ' ([*Oregon Waste, supra*, 511 U.S. at pp. 100-101].) The high court has repeatedly emphasized just how exacting this burden is: 'Our cases require that justifications for discriminatory restrictions on commerce pass the "strictest scrutiny." [Citation.] The State's burden of justification is so heavy that "facial

25

discrimination by itself may be a fatal defect." [Citations.]' ([*Oregon Waste*, at p. 101.])" (*Voss, supra*, 12 Cal.4th at p. 527.)

In addition to prohibiting a state from discriminating against interstate commerce, the dormant Commerce Clause prohibits states from enacting laws that unduly burden interstate commerce. Unlike laws that discriminate, laws that burden interstate commerce are not *per se* invalid. Nondiscriminatory state laws that "regulat[e] even-handedly to effectuate a legitimate local public interest . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (*Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142.)

Plaintiff contends that the permanent resident exception in Measure T facially discriminates against interstate commerce. Plaintiff does not contend that Measure T unduly burdens interstate commerce.

2.      Analysis

Measure T's resident owner exception discriminates on its face against interstate commerce. Measure T unlawfully requires " 'an out-of-state firm "to become a resident in order to compete on equal terms." ' [Citations.]" (*Rosenblatt, supra*, 940 F.3d at p. 451, fn. 5.) The mere fact of nonresidence unlawfully forecloses out-of-state owners from accessing the residential vacation rental market in South Lake Tahoe and directly competing against City residents who let their homes as vacation rentals. (*Granholm v. Heald, supra*, 544 U.S. at p. 472.) The ordinance mandates differential treatment of similarly situated in-state and out-of-state economic interests in a way that wrongfully benefits the former and burdens the latter based solely on the latter's out-of-state domicile. (*Oregon Waste, supra*, 511 U.S. at p. 99.)

The City disagrees and claims Measure T does not violate the dormant Commerce Clause under the holding in *Rosenblatt*. Our decision, however, comports with *Rosenblatt* and is distinguishable from that ruling. *Rosenblatt* concerned an ordinance

adopted by the City of Santa Monica that prohibited owners or lessees of residential property to let their property for 30 days or less, with an exception for rentals where one of the dwelling unit's "primary residents" lived on site in the dwelling unit throughout the visitor's stay. The ordinance referred to the exception as "home sharing." (*Rosenblatt, supra*, 940 F.3d at pp. 442-443.) The plaintiff sued, claiming the ordinance violated the dormant Commerce Clause. (*Id*. at p. 443.) The Ninth Circuit Court of Appeals affirmed the district's court's dismissal of the complaint.

The plaintiff, a city resident who let her home while she traveled, claimed the ordinance discriminated against interstate commerce because, among other reasons, it was an attempt to preclude out-of-state travelers from accessing residential neighborhoods, and it contained an unconstitutional residency requirement allowing only Santa Monica residents to engage in short-term rentals under the "home sharing" exception. (*Rosenblatt, supra*, 940 F.3d at pp. 443, 449, 450.) The Ninth Circuit easily disagreed with the plaintiff's first argument. The ordinance did not preclude anyone from accessing the city's residential neighborhoods. "And, insofar as the ordinance might favor owners by allowing them to live in residential neighborhoods, it does not discriminate against persons outside of Santa Monica, who stand on equal footing with Santa Monica residents in their ability to purchase Santa Monica property and reside there." (*Id*. at p. 449.)

More significantly, the Ninth Circuit also rejected the plaintiff's argument that the ordinance allowed only city residents to engage in short-term rentals. Unlike Measure T, the Santa Monica ordinance did not require the primary resident of the home-shared dwelling to be the dwelling's owner. (*Rosenblatt, supra*, 940 F.3d at p. 450.) As a result, the ordinance did not prevent an out-of-state owner of a Santa Monica residence from home sharing its property or extracting economic value from it. "For example, the out-of-state owner could rent out the property on a long-term basis with a condition that one of the rooms be used for the owner's short-term rentals. Or the owner could expressly

27

allow the long-term renter to sublet a room on a short-term basis in exchange for paying a higher monthly rent. The ordinance also applies equally to owners who reside in Santa Monica, or elsewhere in California, but at a property separate from their rental property. Accordingly, the complaint fails to plausibly allege that the home-sharing exception obviously advantages Santa Monica residents at the expense of out-of-state homeowners." (*Id*. at pp. 450-451, fn. omitted.)

Indeed, the Ninth Circuit distinguished the Santa Monica ordinance from laws that had unlawfully required out-of-state interests to establish distribution networks in the state or to incorporate in the state to take advantage of benefits offered to in-state businesses. The court stated, "Here, the ordinance does not 'require an out-of-state firm "to become a resident in order to compete on equal terms." ' [Citations.]" (*Rosenblatt, supra*, 940 F.3d at p. 451, fn. 5.)

The City nonetheless relies on *Rosenblatt* to support several of its arguments against finding Measure T violated the dormant Commerce Clause. The City argues that in-state and out-of-state property owners are not substantially similar. The City relies on a statement by the *Rosenblatt* court that non-resident property owners were not similarly situated to resident owners because they could not personally serve as the primary resident. (*Rosenblatt, supra*, 940 F.3d at p. 451.) The *Rosenblatt* court's statement was a secondary point, and the City ignores its context as well as the opinion's ruling in relying on it.

The Ninth Circuit said the plaintiff's argument, that the ordinance allowed only Santa Monica residents to engage in home sharing, drew "a false equivalence" between residents and out-of-state property owners. (*Rosenblatt, supra*, 940 F.3d at p. 451.) It explained: "Santa Monica's ordinance does not prohibit out-of-state property owners from home sharing in their out-of-state homes, nor does it prohibit them from allowing home sharing in their Santa Monica properties. While non-resident property owners cannot personally serve as the primary resident whose presence is required during the

28

home share, that is because they are not similarly situated to the Santa Monica residents who can." (*Ibid*.)

We surmise from the court's opinion that the plaintiff had argued the ordinance discriminated against out-of-state owners because they could not serve as the primary resident required to be onsite and thus could not home share. The court rejected the argument, stating, "Contrary to Rosenblatt's characterization, the ordinance does not require the primary resident in the dwelling to be the owner of the dwelling." (*Rosenblatt, supra*, 940 F.3d at p. 450.) The court rejected the argument further by stating that for purposes of being the on-site primary resident, out-of-state owners were not similarly situated to the primary resident. (*Id*. at p. 451.)

The plaintiff's argument also failed because the comparison she sought to draw was irrelevant to the dormant Commerce Clause issue. The Commerce Clause interest at issue was not equal opportunity to serve as the primary resident. It was equal opportunity to own and operate short-term rentals in the city's residential zones. Thus, the court framed the primary issue to be whether the ordinance prevented one of two groups of similarly situated owners, the non-resident owners, "from allowing home sharing in their Santa Monica properties." (*Rosenblatt, supra*, 940 F.3d at p. 451.) The court held it did not. (*Ibid*.) Non-resident owners had equal opportunity to own and operate short term rentals in Santa Monica on the same conditions as residents. They do not have that equal opportunity in South Lake Tahoe under Measure T.

The City cites to *Rosenblatt* where the Ninth Circuit found that the Santa Monica ordinance did not discriminate because non-residents and residents had equal ability to purchase Santa Monica property and reside there. But this argument does not address plaintiff's argument. *Rosenblatt* made this point in response to the argument that the Santa Monica ordinance precluded out-of-state travelers from accessing or purchasing property in the city's residential neighborhoods. (*Rosenblatt, supra*, 940 F.3d at p. 449.) Plaintiff is not arguing that Measure T denies its members the right to purchase property

29

in the City and live there. Plaintiff argues that Measure T's requirement that out-of-state owners *must* purchase and reside in property in the City to be eligible to let the property short-term violates the dormant Commerce Clause. Merely having the ability to purchase and reside in that property is irrelevant to the Commerce Clause analysis.

The City argues we should follow *Rosenblatt* for additional reasons explained in the City's prior briefing. The City argued in its respondent's brief that Measure T, like the Santa Monica ordinance in *Rosenblatt*, did not directly regulate interstate commerce or place an undue burden on interstate commerce. Plaintiff, however, does not contend Measure T directly regulates or unduly burdens interstate commerce. It asserts that Measure T *discriminates* against interstate commerce, a different prohibition of the dormant Commerce Clause. The *Rosenblatt* court addressed whether the Santa Monica ordinance directly regulated interstate commerce because the plaintiff there raised the issue separately from her discrimination claim. (*Rosenblatt, supra*, 940 F.3d at pp. 445, 448, 451.)

The City contended in its respondent's brief that Measure T did not discriminate against interstate commerce because, in addition to the arguments we have addressed above, Measure T did not prohibit out-of-state residents from renting their South Lake Tahoe homes so long as they were not located in a residential area, or, if they were in a residential area, were rented for 30 days or more. This argument ignores the fact that Measure T prohibits out-of-state owners from doing what it authorizes residents to do: rent out their homes in the City's residential zones for periods of less than 30 days. Because both groups share the same economic interests and want to conduct the same economic activity in the same market, the dormant Commerce Clause prohibits the City from barring out-of-state owners from conducting that activity based on their residency. (See *Hignell-Stark, supra*, 46 F.4th at p. 327.) In determining whether Measure T discriminates, the degree and scope of the discrimination are irrelevant. (*Voss, supra*, 12 Cal.4th at p. 517.)

30

We find the analysis of the dormant Commerce Clause issue contained in *Hignell-Stark* to be persuasive. Its holding does not conflict with *Rosenblatt*. *Hignell-Stark* concerned an ordinance enacted by the City of New Orleans that prohibited any person from obtaining a license to own and operate a short-term rental in a residential neighborhood unless the property to be rented was also the property owner's primary residence. (*Hignell-Stark, supra*, 46 F.4th at p. 321.) A group of property owners sued, claiming the ordinance violated the dormant Commerce Clause by discriminating against interstate commerce. (*Id*. at p. 322.) The district court awarded summary judgment in favor of the city on the dormant Commerce Clause issue, but the Fifth Circuit Court of Appeals reversed.

The Fifth Circuit held that the ordinance discriminated against out-of-state property owners on its face. The ordinance allowed only city residents to enter the market for short-term rentals in residential neighborhoods. (*Hignell-Stark, supra*, 46 F.4th at p. 326.) Resident owners and out-of-state property owners were substantially similar for purposes of the dormant Commerce Clause. Like South Lake Tahoe resident owners and non-resident owners, both were private business owners who sought to compete in the market for lodging in the city's residential neighborhoods. The only difference between them was that one group did not live in the city—which meant the prohibition discriminated against interstate commerce. (*Ibid*.)

The Fifth Circuit distinguished its case from *Rosenblatt*. The Santa Monica ordinance permitted out-of-state residents to enter Santa Monica's short-term rental market on equal terms as residents because the person the ordinance required to live on the property being rented did not need to be the property's owner. (*Hignell-Stark, supra*, 46 F.4th at p. 326, fn. 16.) In contrast, the New Orleans ordinance, like Measure T, allowed only owners who resided in their residential properties to enter the market for short-term rentals in residential neighborhoods. (*Id*. at p. 326.)

31

The City contends the *Hignell-Stark* court "inexplicably found residents of New Orleans to be 'substantially similar' private businesses to out-of-state investors." The City argues it is not clear why the *Hignell-Stark* court made that finding because the court "did not explain its reasoning on this point." To the contrary, the Fifth Circuit clearly explained why it found the two groups were substantially similar for purposes of the dormant Commerce Clause: "Both are private businesses, not public entities carrying out traditional government functions. [Citations.] And both seek to compete in the market for lodging in the City's residential neighborhoods. [Citation.] Out-of-staters want to offer the same services to the same customers in the same locations as the City's residents. The only difference between them is that one group doesn't live in the City. That means the residency requirement discriminates against interstate commerce for purposes of the dormant Commerce Clause." (*Hignell-Stark, supra*, 46 F.4th at p. 326.)

The City does not explain why it believes this finding makes a difference here. To the extent the City implies that its private residents and out-of-state owners are not substantially similar because private residents are not "private businesses," the argument is a red herring and misunderstands the point made in *Hignell-Stark*. As explained by the authorities the court cited to support its statement, the prohibitions of the dormant Commerce Clause do not apply to laws authorizing governments to provide public goods and services pursuant to their police power. Such laws have legitimate objectives that are distinct from the simple economic protectionism of private businesses which the Commerce Clause abhors. (*Department of Revenue v. Davis* (2008) 553 U.S. 328, 340-341.) *Hignell-Stark's* point was simply that resident homeowners and out-of-state owners were private, as opposed to public, entities seeking to earn money from letting their homes as short-term rentals, an activity which is not a traditional government function, and thus the dormant Commerce Clause applied and prohibited protecting the residents' economic interests at the expense of out-of-state owners' similar economic interests.

Lastly, the City argues we should not follow the reasoning of *Hignell-Stark* because that case was not a facial challenge to the New Orleans ordinance. The plaintiffs in that case sued under 42 U.S.C. section 1983 for violations of their constitutional rights, including their dormant Commerce Clause claim. (*Hignell-Stark, supra*, 46 F.4th at p. 322.) To succeed on a facial challenge like the one here, a plaintiff must establish that " 'no set of circumstances exists under which the [Ordinance] would be valid.' (*Rosenblatt*, [*supra,*] 940 F.3d at 444 [].)" The City contends that *Hignell-Stark* did not apply this analysis.

We disagree. In *Hignell-Stark*, the plaintiffs were a group of property owners who sought either to renew or obtain short term rental licenses. (*Hignell-Stark, supra*, 46 F.4th at pp. 322-323.) They did not argue that the city violated the dormant Commerce Clause by not renewing or granting their licenses. They contended the ordinance itself violated the Commerce Clause because it discriminated against interstate commerce. (*Id.* at p. 325.) The Fifth Circuit found the residency requirement "discriminates on its face against interstate commerce." (*Id.* at p. 328.) The owners' claim was a facial challenge against the ordinance.

The City's contentions notwithstanding, *Rosenblatt* and *Hignell-Stark* are not inconsistent with each other. Both state that a requirement to become a city resident to let dwellings for short term rentals violates the dormant Commerce Clause. (*Hignell-Stark, supra*, 46 F.4th at p. 326; *Rosenblatt, supra*, 940 F.3d at p. 451, fn. 5.) Our holding comports with both cases and with the distinctions the Ninth Circuit drew in *Rosenblatt* between unlawful residency requirements and the Santa Monica ordinance.

Because Measure T's permanent resident exception facially discriminates against interstate commerce, it is *per se* invalid unless the City can justify the discrimination by showing that the resident exception ' "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." ' (*Oregon Waste, supra*, 511 U.S. at p. 101.) In *Hignell-Stark*, the city advanced legitimate local

33

purposes—preventing nuisances, promoting affordable housing, and protecting neighborhoods' residential character—but the court held that those purposes could be adequately served by reasonable nondiscriminatory alternatives, and the ordinance was therefore unconstitutional. (*Hignell-Stark, supra*, 46 F.4th at pp. 328-329.) Here, neither party has addressed this element of a dormant Commerce Clause violation. We will thus remand for further proceedings to address this issue.

IV

*TRPA Land Use Preemption*

Plaintiff contends Measure T exceeded the initiative power because it was preempted by TRPA's regional plan and the City's area plans approved by TRPA. Those plans allegedly authorize the use of single and multiple family dwellings in the City's residential areas for vacation rentals. Plaintiff argues that because the City has not sought to amend the regional plan and its area plans to accommodate Measure T, the plans supersede Measure T's prohibitions and render them invalid.

The trial court ruled that this issue was not properly before it. Plaintiff's complaint alleged that Measure T "violates state and county ordinances regulating land use in the Lake Tahoe basin and is beyond the voters' initiative power to adopt." The trial court ruled that this allegation did not fairly raise the issue of TRPA preemption because the TRPA regional plan and standards are not state or county ordinances. The court nonetheless ruled on the issue's merits and found that plaintiff had not raised a triable issue of material fact as to whether Measure T was inconsistent with TRPA's regional and local plans.

The City contends the issue is not properly before us for the same reason stated by the trial court. We agree. But because the issue is one of law, and because the parties and TRPA appearing as amicus have fully briefed it, we will address it on its merits.

34

A.    Legal background

TRPA is a legal entity created by the Tahoe Regional Planning Compact.  It serves as a bi-state land use and environmental resource planning agency for the Lake Tahoe Basin.  (*Sierra Club v. Tahoe Regional Planning Agency* (9th Cir. 2016) 840 F.3d 1106, 1109 (*Sierra Club*).)  The California and Nevada Legislatures adopted the compact in 1968, and Congress approved it in 1969.  In 1980, the two states, with the approval of Congress and the President, adopted extensive amendments to the 1969 agreement.  The 1980 Tahoe Regional Planning Compact (Compact) sets forth the structure and functions of TRPA.  (*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency* (2002) 535 U.S. 302, 309-310.)

As required by the Compact, TRPA adopted standards, known as environmental threshold carrying capacities, to protect important environmental values in the Lake Tahoe Basin and the clarity of Lake Tahoe.  (Gov. Code, § 66801, art. II, subd. (i); art. V, subd. (b).)  TRPA also adopted a regional plan and an implementing code of ordinances, including zoning ordinances, to achieve and maintain the carrying capacities.  (*Id.* art. V, subd. (c).)  Any development may not exceed the carrying capacities.  (*Sierra Club, supra*, 840 F.3d at p. 1110.)

TRPA's ordinances establish minimum standards applicable throughout the region.  However, the Compact authorizes a local government to "adopt and enforce an equal or higher requirement applicable to the same subject of regulation in its territory."  (Gov. Code, § 66801, art. VI, sub. (a)(1).)

TRPA updated the regional plan in 2012.  (*Sierra Club, supra*, 840 F.3d at p. 1108.)  The updated regional plan is a general governing document for development and environmental protection in the Basin.  It also authorizes local governments, at their option, to develop more specific area plans with ordinances to govern land use in a specific area.  A local government's area plan and ordinances supersede TRPA plans and

ordinances if TRPA finds the area plan conforms to the regional plan. (*Id*. at p. 1110; Code of Ordinances, §§ 13.1.1., 13.4.1.)[4]

TRPA's code of ordinances states that where a single-family dwelling is a lawful primary use of a parcel, vacation rentals are a permissible use so long as they meet local government compatibility requirements. (Code of Ordinances, §§ 21.2, 21.4.) The compatibility requirements are requirements implemented and enforced by a local government through a cooperative agreement with TRPA and which regulate vacation rentals to ensure neighborhood compatibility. The requirements include measures that mitigate potential adverse impacts related to such issues as refuse and garbage, parking, occupancy, noise, lighting, and signage. (Code of Ordinances, § 90.2.) The City and TRPA entered into a cooperative agreement in 2004.

Plaintiff contends that Measure T conflicts with this provision of the regional plan and with local plans developed by the City which purportedly allow vacation home rentals in residential areas. The City has not sought to amend the regional plan or its area plans in accordance with TRPA policies to accommodate Measure T. Plaintiff argues that as a result, the regional plan supersedes Measure T and renders its provisions invalid.

B.     Analysis

Plaintiff has not established that Measure T unlawfully conflicts with the regional plan. Although TRPA may authorize vacation rental homes in its zoning ordinances, the Compact authorizes the City to adopt more strict or narrow permissible uses than those authorized by TRPA. Measure T's restricting the permissible uses in residential zones qualifies as the adoption and enforcement of "an equal or higher requirement applicable to the same subject of regulation in its territory." (Gov. Code, § 66801, art. VI, sub. (a)(1).) It is a higher requirement because it imposes greater restrictions on the use of

---

[4]     We grant TRPA's request for judicial notice.

land than those imposed by TRPA. And plaintiff directs us to no authority that would require such ordinances to be approved by TRPA.

Nor has plaintiff established that the City was required to adopt or amend area plans to accommodate Measure T. Local governments in the Lake Tahoe Basin are not required to adopt local plans. (Code of Ordinances, §§ 13.1.1., 13.4.1.) Those that do not remain subject to TRPA's regulations in the regional plan and its code of ordinances, subject to the local government's authority to adopt more stringent requirements. (Code of Ordinances, § 13.4.1.) But nothing in TRPA's code of ordinances requires a local government's more stringent vacation rental home regulations to be included in an area plan. (Code of Ordinances, § 13.5.)

Plaintiff asserts that at least two area plans adopted by the City and approved by TRPA allow the use of single and multiple family dwellings for vacation rentals in various residential areas in the City outside of the tourist core: the Tahoe Valley Area Plan/Specific Plan, adopted in 2015, and the 103 Sierra Tract-Commercial, a TRPA plan area statement. It is not clear, however, that Measure T applies to these plan areas.

Measure T prohibits vacation home rentals "within any residential zone." But it does not prohibit vacation home rentals in commercial zones. Although the two area plans cited by plaintiff permit single-family dwellings in some form in many of their zoning districts, neither plan contains a residential zone. The Tahoe Valley Area Plan's zoning districts are open space, commercial mixed-use services, and five different "town center" zones that allow commercial uses: heath care, neighborhood professions, "gateway," mixed use corridor, and core. Similarly, all the land in the 103 Sierra Tract-Commercial area is classified as commercial/public service. Thus, even if the City's adopted area plans had to be amended to accommodate Measure T where applicable—a point which plaintiff has not yet persuaded us—it is not clear that the area plans on which plaintiff relies would require amendment.

37

Plaintiff relies by analogy on *Kracke v. City of Santa Barbara* (2021) 63 Cal.App.5th 1089 (*Kracke*) to argue that Measure T required amending the regional plan before it could be effective. The case is distinguishable. In *Kracke*, the court of appeal held that a city's ban on vacation home rentals in the coastal zone constituted a "development" under the Coastal Act that required the city to obtain a coastal development permit or amend its local coastal program. The Coastal Act broadly defines "development" to include any change in the density or intensity of use of land. The term is not restricted to activities that physically alter the land or water. (*Id*. at p. 1096.) The court ruled that banning vacation rentals changed the intensity of use and access to single-family residences in the Coastal Zone. The ban thus required a coastal development permit or an amendment to the local coastal program. (*Id*. at pp. 1096-1097.)

Plaintiff asserts that under the reasoning of *Kracke*, the City cannot ban vacation rental homes without first amending its local plans to conform to TRPA policy. But, unlike in *Kracke*, plaintiff directs us to no provision of the Compact or any TRPA ordinance or regulation that treats Measure T as an action requiring a permit or requires the City to obtain TRPA approval before enacting it. Nothing in the record indicates the City must obtain TRPA approval or adopt a local plan when it exercises its right under the Compact to enact a more restrictive standard than TRPA requires. The regional plan thus did not preempt Measure T from becoming effective.

V

*Occupancy Limits*

Measure T enacted more strict occupancy limits. The new limits apply to vacation home rentals in residential zones, and they limit occupancy to two persons per bedroom with a maximum occupancy of 12 persons. Plaintiff contends that Measure T's

38

occupancy limits violate the right to privacy under the California Constitution and equal protection.

Because we affirm Measure T's ban of vacation home rentals in residential zones, this argument is now moot.

## DISPOSITION

The judgment is reversed to the extent it found that Measure T's exception for resident owners did not violate the dormant Commerce Clause, and the matter is remanded for further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.  Each party shall bear its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)


                         _____

                         HULL, Acting P. J.


We concur:


_____

KRAUSE, J.


_____

EARL, J.